Joyce BURR, Plaintiff and Appellant,

v.

Cheryl KULAS and Donald K. Lemon, Ph.D., Defendants and Appellees.

Civ. No. 940345.

Supreme Court of North Dakota.

June 1, 1995.

Irvin B. Nodland, P.C., Bismarck, for plaintiff and appellant.

Sara Beth Gullickson, Asst. Atty. Gen., Fargo, for defendant and appellee Cheryl Kulas.

David E. Reich, Sp. Asst. Atty. Gen., of Pearce & Durick, Bismarck, for defendant and appellee Donald K. Lemon.

VANDE WALLE, Chief Justice.

Joyce Burr appealed from an order denying her motion to reconsider the trial court's order granting summary judgment dismissing her action against Cheryl Kulas and Donald K. Lemon on the ground of sovereign immunity and affirming the initial order. We affirm in part, reverse in part, and remand for further proceedings.

In 1993, Burr sued Kulas and Lemon, alleging: (1) Burr began doctoral studies at the University of North Dakota in 1985, with Lemon as her advisor; (2) Burr stored her original works, ideas, documents, and manuscripts on computer discs in her desk in her office at U.N.D.; (3) Near the end of February 1989, Burr underwent surgery requiring her hospitalization for nearly two weeks; (4) In March 1989, Lemon authorized the theft of Burr's doctoral materials; (5) After the theft of Burr's property, it was delivered to Kulas, who used Burr's creative ideas and materials for professional, financial and other gain; (6) Kulas knowingly used the stolen property for the purpose of writing and submitting to the University of Arizona a master's thesis, which Kulas copyrighted to prevent anyone, including Burr, from using or duplicating materials therein; (7) Kulas, Lemon, and others conspired to commit theft of computer discs and other written materials containing valuable original ideas and conspired to put Burr's property to their use; (8) Lemon and Kulas violated Ch. 12.1–06.1, N.D.C.C.,[1] in stealing, receiving, or using her property. Burr's prayer for relief sought damages for loss of a doctoral degree and associated employment opportunities, theft and conversion of original intellectual property, infliction of emotional harm, punitive damages, a trebling of the basic damage award under § 12.1–06.1–03, N.D.C.C., and reasonable attorney fees, costs, and expenses.

Kulas answered the complaint by generally denying the material allegations, specifically denying any intentional or wrongful conduct, and asserting that she was entitled to statutory immunity under § 26.1–21–10.1, N.D.C.C. Lemon answered with a general denial, asserted that the complaint failed to state a claim upon which relief could be granted, asserted that his actions "were taken in his official capacity as a professor at

---

1. Chapter 12.1–06.1, N.D.C.C., deals with racketeer influenced and corrupt organizations. Burr's claims under that chapter will hereinafter be referred to as RICO claims.

UND and therefore the claims against him are barred by sovereign immunity," and asserted that Burr's claim against him "in his individual capacity is barred by qualified immunity and statutory immunity."

On May 23, 1994, Lemon filed a motion to change venue of the action against him from the district court of Burleigh County to the district court of Grand Forks County and to consolidate it for trial with the related pending case of *Joyce Burr v. Richard G. Landry.* The trial court denied the motion to change venue on the ground that it was untimely under § 28–04–06, N.D.C.C., and because Lemon failed to show that the requested change of venue would promote the convenience of witnesses or the ends of justice. The trial court denied the motion to consolidate because that motion was mooted by the court's failure to grant the change of venue to Grand Forks County.

Kulas moved for judgment on the pleadings under Rule 12, N.D.R.Civ.P., or for summary judgment under Rule 56, N.D.R.Civ.P. Burr resisted the motion. After Kulas and Burr filed their briefs and supporting documents, the trial court granted Kulas's motion for summary judgment dismissing the action on the ground of sovereign immunity. The trial court also dismissed Burr's claim against Lemon, even though he did not move for summary judgment, reasoning that, as to Lemon "the result as a matter of law would be the same" as it was with Kulas.[2] The trial court denied Burr's motion for reconsideration and Burr appealed.

■ Except for discretionary acts, in *Bulman v. Hulstrand Constr. Co., Inc.,* 521 N.W.2d 632 (N.D.1994), a majority of this court abolished the State's sovereign immunity from tort liability. The court applied the decision prospectively, except for it and two other cases:

"Furthermore, although we abrogate the State's sovereign immunity from tort liability, we conclude that abrogation should be prospective so that the Legislature can implement and plan in advance by securing liability insurance, or by creating funds necessary for self-insurance. Accordingly, except as to this case and two contemporaneous cases decided today, *Ferris v. North Dakota Centennial Commission,* 521 N.W.2d 643 (N.D.1994), and *Hosman v. North Dakota State University,* 521 N.W.2d 643 (N.D.1994), we abolish sovereign immunity for claims arising fifteen days after adjournment of the fifty-fourth legislative assembly."

521 N.W.2d at 640.[3]

Relying on *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), Burr contends that the partially prospective application of *Bulman* violates the equal protection and due process clauses of the United States Constitution. However, we have held that when a "substantive issue involves state law, we are not precluded from applying the *Chevron* factors to determine retroactivity or prospectivity of our decision." *Kadrmas, Lee & Jackson, P.C. v. Bolken,* 508 N.W.2d 341, 347 (N.D.1993). *See also Muller v. Custom Distributors, Inc.,* 487 N.W.2d 1, 5 n. 7 (N.D.1992) ("Under [*Great Northern Ry. Co. v.*] *Sunburst* [*Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932) ], state courts are not precluded from using the *Chevron* factors in decisions changing state law."). The *Chevron* factors referred to are factors enunciated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct 349, 30 L.Ed.2d 296 (1971), which may be considered in determining if a decision announcing a new rule of law should be applied retroactively or prospectively. *Griffith* and *Beam* do not preclude us from employing a *Chevron* analysis to decide

---

**2.** Rule 56(c), N.D.R.Civ.P., provides in part: "Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "[A]llowing summary judgment to be entered for the nonmoving party in the absence of a formal cross-motion is appropriate." 10A Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure: Civil 2d § 2720,* p. 33 (1983).

**3.** The fifty-fourth legislative assembly enacted Senate Bill 2080 creating Chapter 32–12.2, N.D.C.C., relating to the civil liability of the state.

whether to apply a decision involving state law retroactively, prospectively, or in some form of partial prospectivity.

■ Burr contends that to abolish sovereign immunity as to the parties in *Bulman*, two other cases decided the same day, and to future claims, but not to existing claims violates Art. I, §§ 9 and 22, and Art. IV, § 44, N.D. Const. In view of our previous decisions applying a new rule of law prospectively, we need not extensively discuss this contention. We are not persuaded that the decision in *Bulman* violated any provisions of the North Dakota Constitution.

■ Burr contends that participation in the North Dakota Insurance Reserve Fund waived the State's sovereign immunity. We disagree. *See* § 26.1–23.1–02, N.D.C.C. ("Participation in a self-insurance pool under this chapter does not constitute a waiver of any existing immunities otherwise provided by the constitution or laws of this state.") and § 32–12.1–15(1), N.D.C.C. ("No purchase of insurance pursuant to this section or participation in a government self-insurance pool may be construed as a waiver of any existing immunity to suit.").

■ We conclude that the trial court properly dismissed any claims against the State or against Kulas and Lemon in their official capacities on the ground of sovereign immunity.

Burr's RICO claims against Kulas and Lemon, individually, and their immunity defenses, however, involve genuine issues of material fact precluding summary judgment.

■ Relying on *Nix v. Norman*, 879 F.2d 429 (8th Cir.1989), and Rules 9(h) and 10(a), N.D.R.Civ.P., Kulas argues that she has not been sued in her individual capacity. Lemon also contends that he has not been sued in his individual capacity. We disagree.

In *Nix v. Norman, supra*, 879 F.2d at 431, the court said:

"As a judgment against a public servant in his individual capacity exposes him or her to compensatory and punitive damages, we have repeatedly stated that section 1983 litigants wishing to sue government agents in both capacities should simply use the

following language: 'Plaintiff sues each and all defendants in both their individual and official capacities.'"

The court also said that Rule 9(a), F.R.Civ. P., "appears to *require* Nix to make a capacity stipulation in the complaint" because "[t]he Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees." *Id.*

■ Kulas has requested that we "extend the holding in *Nix* to the present case requiring Burr to make a capacity stipulation in her Complaint." If we were inclined to extend *Nix*, we would not do so on the basis of the complaint filed in this case. There is no Eleventh Amendment issue in this case. Anyone unsure about whether either defendant was being sued in his or her individual capacity should have done as the trial court did in *Kristensen v. Strinden*, 343 N.W.2d 67, 71 (N.D.1983), and ask Burr if either defendant "was being sued in his individual capacity, his official capacity ..., or both." From our examination of the complaint, we conclude that it clearly states claims against Kulas and Lemon, individually. Our only question is whether the complaint states any claims against either defendant in his or her official capacity, but that question is moot in light of the parties' apparent agreement that it does and of our resolution of the sovereign immunity issue.

■ The trial court recognized that there were important factual issues with regard to Burr's RICO claims:

"The RICO portion of the Complaint presents a unique legal question. There are major and substantial factual questions which all revolve around the central question of: 'Did Ms. Kulas, Dr. Lemon or Dr. Landry know that the materials used were the plaintiff's?' That is fundamentally and totally factual and thus a jury question. Further, whether the defendants' acts were so egregious (i.e., grossly negligent, malfeasance, or willful wanton misconduct) as to remove themselves from the 'blessings' of statutory immunity [Section 32–12.1–15(2) ] is also fundamentally a jury question."

Nevertheless, the court granted dismissal, ruling that "the sovereign is [ ] immune, as are its agents." We agree with the trial court that the RICO portion of Burr's complaint presents "substantial factual questions." We conclude that those questions present genuine issues of material fact precluding summary judgment. We also conclude that the immunity defenses asserted by Kulas and Lemon raise genuine issues of material fact precluding summary judgment.

The immunity defenses asserted by Kulas and Lemon are limited by §§ 32–12.1–15(2) and 26.1–21–10.1(1)(b), N.D.C.C. Section 32–12.1–15(2), N.D.C.C., provides:

"No employee of the state may be held liable in the employee's personal capacity for actions or omissions occurring within the scope of the employee's employment unless such actions or omissions constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct."

Section 26.1–21–10.1(1)(b), N.D.C.C., provides:

" 'Scope of office or employment' means the officer or employee was acting on behalf of the state in the performance of duties or tasks lawfully assigned to the employee by competent authority. Actions of an employee which constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct are not within the scope of the employee's office or employment for purposes of this chapter."

■ "On appeal from a summary judgment, the evidence is viewed in a light most favorable to the party against whom the summary judgment was granted." *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 136 (N.D.1990). Such things as knowledge, *Wheeler v. Schmid Laboratories, Inc., supra*, intent, *State v. Miller*, 466 N.W.2d 128 (N.D. 1991), negligence, *Wanner v. Getter Trucking, Inc.*, 466 N.W.2d 833 (N.D.1991), and state of mind, *State v. Franck*, 499 N.W.2d 108 (N.D.1993), are ordinarily questions of fact.

Burr asserted in an affidavit: Lemon was her advisor when she was a graduate student at UND; she kept her writing and research materials on computer discs in her office; in March of 1989, Dr. Lemon conspired in the theft of her doctoral materials, including a survey instrument, which were delivered to Kulas, who used them to complete and copyright a master's thesis; Janet Ahler testified in a deposition in a related case "that when she attempted to discuss the taking of my materials with Dr. Landry and Dr. Lemon, she was 'shussed' so as to indicate she should not be talking so loud about it in a public hallway at the school with the inference that people might hear what happened;" and the theft of her property was "willful, was intentional, and wrongful."

Kulas stated in an affidavit:

"4. In developing my survey form, I reviewed approximately thirty surveys, including Joyce Burr's survey which I received from Dr. Landry.

"5. When Dr. Landry provided me with copies of the survey documents, I had no knowledge where he obtained the information. I had no knowledge that Joyce Burr had not consented to my using her survey form. In fact, I assumed that she had consented to my using the survey form.

\* \* \* \* \* \*

"7. To the best of my knowledge, only six or seven questions out of forty-five questions on my survey instrument were used verbatim from Joyce Burr's survey instrument."

When her deposition was taken, Kulas was asked if she knew where the survey instrument given to her by Dr. Landry came from. Kulas replied: "Well, I sort of had a sense that I might have known where it came from." Kulas further explained: "[M]y sister, who is a friend of [Burr], had indicated that she was undertaking a study of the Indian studies course, and so I assumed that that might have been, you know, where it would have come from." Kulas also said that Dr. Landry "may have" told her where the survey instrument came from, but she "didn't pay much attention to it, really." In a March 7, 1990, letter to Burr, Kulas acknowledged that she "exercised poor judgment in accepting and using aspects of the survey."

Janet Ahler stated in a deposition that at a meeting on March 1, 1989, she was assured

**394**

"that they would not conduct research that would impinge on Joyce Burr's dissertation topic." Ahler also said that she saw Dr. Landry and Dr. Lemon in a stairwell of the Education Building and asked, "what is going on with DPI using Joyce's survey? And what I recall is that Dr. Landry put his finger up to his mouth and went sh (indicating)."

■ Viewing the evidence in the light most favorable to Burr, against whom summary judgment was granted, we conclude that there are genuine issues of material fact, precluding the entry of summary judgment, as to both (1) Burr's RICO claims, with regard to whether Lemon or Kulas in their personal capacity engaged in theft when they knowingly took, exercised unauthorized control over, made an unauthorized transfer of, obtained, received, retained, or disposed of Burr's property with intent to deprive Burr of her property, or if Lemon or Kulas engaged in computer fraud by gaining access to, altering, damaging, modifying, copying, disclosing, or taking possession of any part of Burr's computer system storing her intellectual property; and (2) whether Lemon's and Kulas's activities with regard to Burr's intellectual property constituted reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct, exposing them to possible personal liability under § 32–12.1–15(2), N.D.C.C., because their conduct was not within the scope of their employment under § 26.1–21–10.1(1)(b), N.D.C.C.

The order granting summary judgment for Lemon and Kulas is affirmed insofar as it dismisses any claims against the State or against Lemon and Kulas in their official capacities as State employees, on the ground of sovereign immunity, and is otherwise reversed and the matter is remanded for further proceedings with regard to the claims against Lemon and Kulas individually, in their personal capacities.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.