**Mark LEVEY by the Personal Representative of his Estate and Alma and Frank Levey, Parents of Mark Levey, Deceased, Plaintiffs and Appellants,**

v.

**STATE DEVELOPMENTAL CENTER, Grafton, North Dakota, Defendant and Appellee.**

**Civ. No. 950054.**

Supreme Court of North Dakota.

June 27, 1995.

Irvin B. Nodland, Bismarck, for plaintiffs and appellants.

Sara Beth Gullickson, Asst. Atty. Gen., Fargo, for defendant and appellee.

LEVINE, Justice.

Mark Levey, by the personal representative of his estate, and Alma and Frank Levey [hereinafter collectively "Leveys"] appeal from a district court judgment dismissing their claims against the State Developmental Center in Grafton. The judgment of dismissal was entered in response to a supervisory writ issued by this court January 19, 1995.

The Leveys first challenge our decision in *Bulman v. Hulstrand Construction Co., Inc.,* 521 N.W.2d 632 (N.D.1994), in which a majority of this court abolished the State's sovereign immunity from tort liability, except as to discretionary acts. We applied the decision prospectively, except as to the parties in *Bulman* and two other cases decided the same day. *Id.* at 640. The Leveys contend that the partial prospectivity of *Bulman* violates Art. I §§ 9, 21, and 22, and Art. IV § 44 of the North Dakota Constitution. We recently rejected these arguments in *Burr v. Kulas,* 532 N.W.2d 388 (N.D.1995).

The Leveys argue that even if the Developmental Center may claim the protection of sovereign immunity, the State waived immunity by purchasing insurance coverage for the Department of Human Services. We also rejected that argument in *Burr,* 532 N.W.2d at 392.

The Leveys also contend that the State Developmental Center waived the benefit of sovereign immunity under NDCC § 32–12.1–15(2). However, subsection 2 of section 32–12.1–15 expressly applies only to an "employee of the state ... in the employee's personal capacity." That employee cannot be held liable unless the employee's acts "constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct." *Id.* In their complaint, the Leveys did not name any employees in any capacity, much less in their "personal capacity," *i.e.,* individually. Cf. *Burr,* 532 N.W.2d at 393. Therefore, the trial court did not err in determining that the State Developmental Center did not waive its sovereign immunity under § 32–12.1–15(2).

Finally, the Leveys assert they are entitled to relief under 42 U.S.C. § 1983, for civil rights violations by persons acting under color of state law. But, a section 1983 action may not lie against the State because a state is not a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See also Livingood v. Meece,* 477 N.W.2d 183, 190 (N.D.1991).

We, therefore, affirm the judgment of dismissal.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

I join in this decision. I write separately to add context, to emphasize the reasons for prospective application of the State's tort responsibility, and to propose direct judicial enforcement of constitutional rights on their own terms in future cases like this one.

As customary then, Alma and Frank Levey placed their six-year-old son, Mark, with the State Development Center for the care and training of mentally retarded children at Grafton, North Dakota in 1960. On December 9, 1989, Mark, then age thirty-five, was removed to a local hospital for surgery on a severed intestine, allegedly injured from being beaten and kicked. Mark died from his injury on Christmas Day, 1989.

In 1991, Leveys sued the State Development Center for their son's injuries and wrongful death. According to the affidavit of a Center employee, before Mark was taken to the hospital for surgery on his severed intestine, he had spent part of a day "laying on the floor holding his stomach and moaning in pain." The Leveys claimed that, "[i]n the years, months and days just prior to his death, Mark Levey was subjected to cruel and abusive treatment, beatings, and humiliations at the hands of staff personnel" at the Center. The Leveys blamed the Center, claiming it had "failed and neglected to monitor, observe and enforce standards of care for patients committed to [it] and as a result when Mark Levey was injured by beatings and other mistreatment of staff and patients, he died from injuries sustained and from lack of prompt, accurate and timely care."

The State moved to dismiss the Levey's suit on grounds it was "barred by the doctrine of sovereign immunity." Leveys obtained and filed some affidavits and statements to support their allegations that Mark had been abused, beaten, and injured. In June 1993, the trial court denied the State's motion to dismiss, concluding that "the doctrine of sovereign immunity is archaic, unjust, and contrary to the general welfare of the citizenry of North Dakota." The court decided it "must provide the necessary and proper judicial intervention which this case yearns for."

In 1994, this court abolished the State's sovereign immunity from tort liability, except for discretionary governmental acts. *Bulman v. Hulstrand Construction Co., Inc.*, 521 N.W.2d 632 (N.D.1994). This change resulted from a revised reading of the guarantee in the Declaration of Rights in the North Dakota Constitution, Art. I, § 9, that "All courts shall be open, and every man for any injury done him ... shall have remedy by due process of law," meaningfully making government no less responsible for its wrongdoing than any other person or entity. *Id.* at 634–37. We applied the change prospectively, however, except for the prevailing claimants in *Bulman* and two other pending cases decided at the same time. *Id.* at 640. This prospective application foreclosed other cases pending in the trial courts.

After the prospective decision in *Bulman* and in October 1994, the State renewed its motion to the trial court to dismiss this case. In November 1994, the trial court again denied dismissal. The State promptly moved for reconsideration, pointing out to the trial court that this court had also "recently granted three supervisory writs ordering a district court judge to dismiss [other pending] cases against the State on Sovereign immunity grounds." The trial court uneasily adhered to its denial of a dismissal, noting the great irony in a prospective change barring this most deserving claim.

In January 1995, the State sought a supervisory writ from this court to direct the trial court to grant the renewed motion to dismiss. In keeping with *Bulman's* promise to the State of prospective application of the State's renewed tort responsibility, this court promptly ordered the trial court to dismiss this action against the State Development Center. The trial court did so. The Leveys appealed. Today, we reject the Levey's additional arguments, adhere to the prospective application of the State's tort responsibility, and affirm the supervised judgment of dismissal.

Because this case would ordinarily merit a trial to resolve serious allegations of outrageous conduct by State employees, officials, and supervisors, which normally are taken as true at the pleading stage before trial, I

concur hesitantly and reluctantly. I believe the State's substantial fiscal reliance on a long-standing judicial misinterpretation of the constitution is a sufficient reason for prospective application.

That was the reason for the similar prospective application twenty years ago, when *Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D.1974), made local governments prospectively responsible for their wrongdoings. "A change of such far-reaching application requires careful consideration of the manner in which it is to be applied to minimize confusion and injustice for those relying upon previous decisions of this court." *Id.* at 803–04.[1] *Kitto* identified two principal purposes of prospective application: "to allow those governmental bodies which have relied upon our previous decisions adequate time to arrange liability insurance coverage for their acts or omissions" and "to allow the legislature opportunity to adopt such legislation as it deems advisable to mitigate any hardships arising from this decision." *Id.* at 804. Those considerations equally justify today's decision denying retroactive application of *Bulman's* change.

Yet, government institutions, officers, and employees cannot be above the laws and must be legally accountable for wrongful conduct. "The injuries inflicted by officials acting under color of law, while no less compensable in damages than those inflicted by private parties, are substantially different in kind [from those inflicted by private parties]." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 409, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619 (1971) (J. Harlan, concurring). Governmental accountability has a new beginning under *Bulman v. Hulstrand Construction Co., Inc.,* 521 N.W.2d 632. But, as this case—a casualty of the prospective effect of a corrected reading of the access-to-the-courts guarantee of the constitution's Declaration of Rights—illustrates, the checks and balances implicit in the doctrine of separation of powers should continue governmental accountability through the judicial branch.

The fundamental principle of separation of powers necessitates, I believe, judicial enforcement of each of the rights of an individual declared in the North Dakota Constitution. A state constitutional right is "self executing" if the judiciary can enforce it without the assistance of a legislative enactment. *Davis v. Burke,* 179 U.S. 399, 403, 21 S.Ct. 210, 212, 45 L.Ed. 249 (1900) (declaring a provision of the Idaho constitution to be "self executing"; "where a constitution asserts a certain right, ... it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provisions.") In his brilliant concurrence in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. at 407, 91 S.Ct. at 2010, Justice Harlan proclaimed: "[T]he judiciary has a particular responsibility to assure the vindication of constitutional interests such as those embraced by the Fourth Amendment." In granting an individual a monetary remedy for violation of the Fourth Amendment guarantee against unreasonable searches and seizures, the *Bivens* majority, 403 U.S. at 397, 91 S.Ct. at 2005, quoted the landmark opinion in this field. Nearly two centuries ago, Justice Marshall in *Marbury v. Madison,* 1 Cranch 137, 163, 2 L.Ed. 60 (1803), said: "The very essence of civil liberty certainly

---

1. With some reason, Leveys question whether the State could fairly rely on the old misinterpretation after *Kitto* pointedly recommended legislative action to abolish the State's sovereign immunity, as well. 224 N.W.2d at 804. "[L]egislation to provide a remedy against the state would be an essential subject of consideration." *Id.* The State took only minimal action to authorize State agencies to purchase insurance or join an insurance pool. *See* NDCC 32–12.1–15(1) and its antecedents. Leveys describe this half-hearted action as "whistling through the graveyard," because the Legislature made the change contradictory: "Participation in a self-insurance pool under this chapter does not constitute a waiver of any existing immunities otherwise provided by the constitution or laws of this state." NDCC 26.1–23.1–02 (part). Despite this misguided gamesmanship, I recognize that the public pocketbook has been, in fact, managed in reliance on sovereign immunity. In my opinion, that reliance interest, combined with judicial respect for the legislative prerogative as part of doctrinal separation of powers, justifies the prospective application of *Bulman's* change that makes the State responsible for wrongdoings like all its citizens are. After seventy years of injustice through judicial misinterpretation, a short delay can be no worse.

consists in the right of every individual to claim the protection of the laws, whenever he receives an injury."

Like the Bill of Rights in the United States Constitution, enforced in *Bivens* by a judicial damage remedy, the Declaration of Rights in the North Dakota Constitution guarantees an individual's rights against government action. Thus, Article I, § 8, guarantees: "The right of the people to be secure in their persons, ... against unreasonable ... seizures shall not be violated...." If Mark Levey was abused and beaten by state employees in a state institution, then the state institution itself made an unreasonable seizure, if any supervisor had knowledge of the wrongdoings, and either directly ordered them, condoned them, or failed to properly exercise their duty to prevent them. Only a judicial damage remedy could vindicate Mark Levey's constitutional right to be secure against unreasonable seizures.

For whatever reason, Leveys did not make their claim for Mark's injuries against any individual employee of the State Development Center, as they might have. If Leveys had done so, they would undoubtedly have been entitled to a trial of their claim under 42 U.S.C. § 1983 for civil rights violations by "persons" acting under color of state law. *See also Rosenberg v. Crandell,* 56 F.3d 35 (8th Cir.1995) (holding prison infirmary assistants liable in a prisoner's *Bivens* action for deliberate indifference to serious medical needs). But today's opinion of this court written by Justice Levine correctly concludes that a § 1983 action cannot be brought against the State. *Will v. Michigan Dep't Of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Livingood v. Meece,* 477

N.W.2d 183, 190 (N.D.1991). These decisions show a state is not a "person" for § 1983 liability.

Though a *Bivens*-type enforcement of the constitutional guarantee against unreasonable seizures was not presented in this case, a state constitutional right can be vindicated on its own terms by judicial enforcement through a *Bivens*-type action. *See* Susan Bandes, *Reinventing Bivens: The Self-Executing Constitution,* 68 S.Cal.L.Rev. 289 (1995); Tammy Wyatt–Shaw, *The Doctrine of Self–Execution and The Environmental Provisions of The Montana State Constitution: "They Mean Something,"* 15 Pub.Land L.Rev. 219 (1994); John M. Baker, *The Minnesota Constitution As A Sword: The Evolving Private Cause of Action,* 20 Wm. Mitchell L.Rev. 313 (1994). Mark Levey's constitutional right to security from unreasonable seizures could have been enforced only by a posthumous trial for money damages. No other remedy can effectively vindicate an individual's rights against wrongful government conduct after the individual has died from the wrongful conduct.

While it is too late for that remedy for Mark Levey, I submit, in the future, a judicial remedy in damages should be available to directly enforce a constitutional right against governmental wrongdoing.