**Martha Jane STRATTON and Terry Stratton, Plaintiffs and Appellants,**

v.

**MEDICAL CENTER REHABILITATION HOSPITAL formerly doing business as the University of North Dakota Medical Center Rehabilitation Hospital; and the State of North Dakota doing business as the University of North Dakota Medical Center Rehabilitation Hospital, Defendants and Appellees.**

**Civil No. 950318.**

Supreme Court of North Dakota.

May 14, 1996.

Rehearing Denied June 27, 1996.

Richard A. Ohlsen (argued), Brainerd, MN, for plaintiffs and appellants.

Robert J. Hovland (argued), of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendants and appellees.

MESCHKE, Justice.

Martha Jane Stratton and Terry Stratton appeal from a summary judgment dismissing their claims against the Medical Center Rehabilitation Hospital [Center] and the State of North Dakota. We affirm, concluding that the Center and the State are immune from liability under the pre-*Bulman* doctrine of sovereign immunity.

Martha Jane injured herself in a fall while leaving the Center after completion of treatment on December 13, 1989. Strattons sued the Center and the State, alleging the Center was negligent in allowing Martha Jane to leave the treatment room without assistance. Strattons also alleged that, at the time of the incident, the Center was owned and operated by the State. The Center and the State moved for summary judgment. The trial court concluded that Strattons' claims were barred by sovereign immunity and entered judgment dismissing all claims. Strattons appealed.

■ The State's sovereign immunity from tort liability, except for discretionary acts, was abolished by a majority of this court in *Bulman v. Hulstrand Construction Co.*, 521 N.W.2d 632 (N.D.1994). That decision applies prospectively only, except as to *Bulman* and two companion cases. *See Bulman*, 521 N.W.2d at 640. Since then, we have refused to apply *Bulman* to actions arising before its effective date. *Levey v. State Developmental Center*, 533 N.W.2d 707, 708 (N.D.1995); *Burr v. Kulas*, 532 N.W.2d 388, 392 (N.D. 1995). Thus, the doctrine of sovereign immunity still applies in this case.

■ Strattons argue that the trial court erred in concluding that the Center was protected by sovereign immunity. They assert that, because the Center was engaged in a proprietary function at the time of Martha Jane's injury, the Center was not immune.

Strattons argue that we recognized a distinction between proprietary and governmental functions under sovereign immunity in *Leadbetter v. Rose*, 467 N.W.2d 431 (N.D. 1991). They also rely upon two cases cited in *Leadbetter*, *Durham v. Parks*, 564 F.Supp. 244 (D.Minn.1983), and *Vaughn v. Regents of the University of California*, 504 F.Supp.

1349 (E.D.Cal.1981). Each of those three cases considered whether a university was an arm of the state entitled to sovereign immunity, and recited a list of six factors to be used in making that determination. One of the six factors is "whether the university is performing a governmental or proprietary function." *Leadbetter,* 467 N.W.2d at 432. In *Leadbetter,* relying upon the list of six factors from *Durham* and *Vaughn,* a majority of this court concluded that the University of North Dakota is an arm of the State entitled to sovereign immunity.

The Center is unquestionably an arm of the State in this case. In their complaint, Strattons alleged that the Center "was owned and operated by the State of North Dakota doing business as the University of North Dakota Medical Center Rehabilitation Hospital at the time of the negligence complained of herein, and therefore the State of North Dakota is a proper party Defendant." In a stipulation of facts, Strattons further conceded that the Center is "a division of the University of North Dakota," and "is a state owned institution over which the ultimate authority is the State Board of Higher Education." Because Strattons concede that the Center was owned and operated by the State, that the State is a proper party defendant, and that the Center is a division of the University of North Dakota that was held to be an arm of the State in *Leadbetter,* 467 N.W.2d at 434, the Center is clearly an arm of the State entitled to sovereign immunity.

Even if the Center is an arm of the State, Strattons rely upon *Leadbetter* and cases from other jurisdictions to argue that the State should not be immune when it engages in proprietary, as distinct from governmental, functions. Thus, Strattons assert, the State and the Center should be liable when they engage in delivering medical services to paying patients.

But *Leadbetter* does not support the assertion of a broad exemption from sovereign immunity when an arm of the State engages in a proprietary function. This court's recognition in *Leadbetter* of a distinction between proprietary and governmental functions related only to the preliminary question of whether the University was an arm of the

State. As *Schloesser v. Larson,* 458 N.W.2d 257, 258–259 (N.D.1990), illustrates, a majority of this court consistently rejected the argument, before *Bulman,* that the State, or an arm of the State, may be held liable in tort for actions committed while engaged in a proprietary function.

Strattons assert that, even if sovereign immunity applies, the Center waived its immunity by procuring insurance. The Center participated in the North Dakota Insurance Reserve Fund [Reserve Fund], a government self-insurance pool. Strattons assert this waived the Center's immunity under NDCC 15–10–17(14). That section authorized the State Board of Higher Education or institutions under its control to purchase insurance, and also declared:

> If the board or any institution under its control purchases insurance pursuant to this subsection, the purchaser shall waive immunity to suit for liability only to the types of insurance coverage purchased and only to the extent of the policy limits of such coverage.

In *Burr,* 532 N.W.2d at 392, we concluded that the University of North Dakota did not waive its sovereign immunity by participating in the Reserve Fund, relying upon two statutes that specifically declare participation in the Reserve Fund does not constitute the purchase of insurance that waives sovereign immunity:

> *Government self-insurance pools not insurers.* Any government self-insurance pool organized under chapter 32–12.1 is not an insurance company or insurer. The coverages provided by such pools and the administration of such pools does not constitute the transaction of insurance business. Participation in a self-insurance pool under this chapter does not constitute a waiver of any existing immunities otherwise provided by the constitution or laws of this state.

NDCC 26.1–23.1–02. Similarly, under NDCC 32–12.1–15, participation in a government self-insurance pool by the State or a state agency may not be construed as a waiver of any existing immunity to suit. We conclude that the Center did not waive its

sovereign immunity when it participated in the Reserve Fund.

The trial court correctly concluded that this action was barred by sovereign immunity. We affirm the judgment dismissing Strattons' claims.

VANDE WALLE, C.J., NEUMANN and SANDSTROM, JJ., and LEVINE, S.J., concur.

The Honorable Mary Muehlen Maring was not a member of the Court when this case was heard and did not participate in this decision.

SANDSTROM, Justice, concurring.

A private attorney represented the State in this proceeding. This was contrary to N.D.C.C. §§ 54–12–01 and 54–12–08—a fact not recognized until oral argument. Courts should not permit a private attorney, without an appointment of that individual by the Attorney General, to represent the State of North Dakota in litigation.

VANDE WALLE, C.J., and NEUMANN, J., concur.