**Roland RIEMERS, Plaintiff,**

**v.**

**SUPER TARGET OF GRAND FORKS, TARGET CORPORATION, Defendant.**

**Civil File No. A2–04–106.**

United States District Court, D. North Dakota, Northeastern Division.

March 8, 2005.

---

Roland Riemers, Grand Forks, ND, pro se.

Carlton J. Hunke, Leah M. Warner, Vogel Law Firm, Fargo, ND, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ERICKSON, District Judge.

Before the Court is Defendant's motion for summary judgment (doc. # 8). Plaintiff has filed a brief in opposition (doc. # 11). Defendant has filed a reply brief (doc. # 12). This decision follows.

## I. SUMMARY OF HOLDING

This Court finds that Plaintiff is not entitled to exercise his federal First Amendment rights nor his state free expression rights on Defendant's private property. Therefore the Court grants Defendant summary judgment as to all federal and state claims.

## II. BACKGROUND

There are no genuine material facts in dispute. In August 2004, Plaintiff Roland Riemers requested permission to access the Super Target of Grand Forks, property privately owned by the Target Corporation of Minnesota, in order to collect signatures for a political petition. In accordance with Target's company policy, the manager on duty rejected Plaintiff's request. The Super Target of Grand Forks is a private retail department and grocery store. It is not a shopping mall nor is it located in a shopping mall. The express written policy of Target Corporation and the Super Target store of Grand Forks at the time of, and prior to, the event alleged by the Plaintiff restricted use of its premises to business use only. Non-profit organizations, political organizations or individuals engaged in political activity are not permitted to engage in activities such as soliciting, distributing literature, selling merchandise or holding events on its premises. In August of 2004, Plaintiff filed this lawsuit in state court, alleging violations of his First Amendment rights, as well as a violation of his rights under the North Dakota Constitution, sections 2, 4 and 5. Soon thereafter, Defendant filed a notice of removal to federal court and subsequently moved for summary judgment on all claims.

## III. DISCUSSION

### A. Summary Judgment

Pro se complaints are to be construed liberally. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

Summary judgment is appropriate where the pleadings, discovery, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, however, the nonmoving party must make a sufficient showing on every essential element of his case on which he bears the burden of proof. *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir.2004). The nonmoving party cannot rest upon mere denials or allegations in the pleadings. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. The nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Plaintiff has no federal constitutional First Amendment rights on the private property of a retail store

■ Even though Plaintiff has recently conceded in his opposition brief that "there is no federal free speech right on privately owned shopping mall property," because Plaintiff originally pleaded a violation under the First Amendment, this Court will address the issue.

The Supreme Court has previously determined the rights of individuals to express their views in privately owned shopping centers on more than one occasion. An overview of those cases will reveal the extent of First Amendment rights in circumstances similar to those in the case under review. The case *Lloyd Corp., Ltd. v. Tanner* involved a 50–acre shopping center containing 60 stores, parking facilities, malls, private sidewalks, gardens, an auditorium, and a skating rink. 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). The center employed 12 security guards, commissioned by the city, who were uniformed and licensed to carry firearms. *Id.* at 554, 92 S.Ct. 2219. Signs were posted indicating that permission to use the areas could be revoked at any time. *Id.* at 555, 92 S.Ct. 2219. Political use was generally forbidden. *Id.* The center had a strict policy against handbilling. *Id.* When five war and draft protesters entered the shopping center in order to pass out handbills protesting American military operations in Vietnam, security guards told the protesters to leave. *Lloyd Corp.*, 407 U.S. at 556, 92 S.Ct. 2219. The decision to grant an injunction to the protestors against the center was eventually appealed to the Supreme Court. The Court pointed out that the First and Fourteenth Amendments protected against State action, not action by private property owners using the property nondiscriminatorily for private purposes only. *Id.* at 567, 92 S.Ct. 2219. The Court also held that property does not lose its private character simply because the public is generally invited to use it for designated purposes. *Id.* at 569, 92 S.Ct. 2219.

> Few would argue that a free-standing store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there. Nor is size alone the controlling factor. The essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center.

*Lloyd*, 407 U.S. at 569, 92 S.Ct. 2219. The Court ultimately held that Lloyd Center did not dedicate any part of its property to public use so as to entitle the protesters to First Amendment rights. *Id.* at 570, 92 S.Ct. 2219.

In *Hudgens v. NLRB*, the Court followed the rationale and holding of Lloyd, and found that a group of striking employ-

ees had no First Amendment right to enter a shopping center to advertise their strike. 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). The protesters could have distributed the handbills on any public street, any sidewalk, or in any building of the city. *Id.*

Finally, in *PruneYard Shopping Center v. Robins,* high school students soliciting support for their opposition to a United Nations resolution had set up a table inside a large 21–acre shopping center in order to distribute pamphlets and to ask shoppers to sign a petition. 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). The California Supreme Court had decided that the free speech and petition provisions of the California Constitution protected the students' action. *Id.* at 78, 100 S.Ct. 2035. In an appeal to the United States Supreme Court, the Court reiterated that the federal constitution did not grant First Amendment rights on private property, however, they held that the states were free to provide greater rights in their constitutions than are provided in the federal Constitution. *Id.* at 81, 100 S.Ct. 2035.

The appropriate conclusion drawn from this line of cases is that if large shopping malls are not public fora for First Amendment purposes, than neither is a single retail store such as Super Target of Grand Forks. If the Super Target is not a public forum, then Defendant did not violate Plaintiff's First Amendment rights when it denied him access to its store for the purpose of collecting signatures for a petition. *PruneYard Shopping Center,* 447 U.S. at 81, 100 S.Ct. 2035 (citing *Hudgens,* 424 U.S. at 517–21, 96 S.Ct. 1029). Plaintiff has conceded this point in his opposition brief. Therefore Plaintiff's First Amendment claim is summarily dismissed.

### C. Rights under the North Dakota Constitution

North Dakota courts have infrequently interpreted the rights of free expression granted under the state constitution. However, Justice Meschke provides this Court with guidance on how to construe the North Dakota Declaration of Rights. "Like the Bill of Rights in the United States Constitution ... the Declaration of Rights in the North Dakota Constitution guarantees an individual's rights against government action." *Levey v. State Dev. Ctr.,* 533 N.W.2d 707, 711 (N.D.1995) (Meschke, J., concurring). It is explicit in Justice Meschke's statement that the Declaration of Rights protects individuals from the government, not from other private individuals.

#### a. Article I, section 2

■ In his reply brief, Plaintiff has claimed that Article I, section 2 of the North Dakota Constitution gives him the right to petition on the private property of Super Target of Grand Forks. Article I, Section 2 reads, "All political power is inherent in the people. Government is instituted for the protection, security and benefit of the people, and they have a right to alter or reform the same whenever the public good may require."

Not a single North Dakota court has ever interpreted this section as a right to petition on private property, but rather have interpreted it as a limit on state intervention in the right of the people to have a Republican form of government. See, e.g., *State ex rel. Agnew v. Schneider,* 253 N.W.2d 184, 187 (N.D.1977) (holding that the North Dakota Constitution is a document of limitations upon the state government, unlike the United States Constitution, which is a grant of power to the federal government); *State ex rel. Brunette v. Sutton,* 71 N.D. 530, 3 N.W.2d 106

(1942) (holding that the County Board of Commissioners does not have the power to intervene in the incorporation of a village if the citizens wishing to incorporate have complied with all the laws related to the incorporation); *Brown v. Steckler*, 40 N.D. 113, 168 N.W. 670 (1918) (finding that the legislature did not violate the North Dakota Constitution by allowing an exemption of a benefit provided by a fraternal beneficiary society from attachment or garnishment); *State ex rel. Linde v. Taylor*, 33 N.D. 76, 156 N.W. 561, 564 (1916) (holding that the executive, legislative, and judicial departments are public servants which must exercise their powers in the manner provided by the Constitution). The actual purpose of Section 2 is to fulfill Section 4 of the Enabling Act, which requires that the state constitution create a Republican form of government.

This Court declines to extend the historic interpretation of this provision and holds that the Defendant did not violate Plaintiff's rights under Article I, Section 2 of the North Dakota Constitution.

### b. *Article I, Sections 4, 5*

■ Plaintiff also claims that Defendant violated his rights under Article I, Sections 4 and 5 of the North Dakota Constitution when it denied him access to its private property because he sought signatures from Defendant's customers for a political petition. Plaintiff argues that under Pruneyard, states are allowed to interpret their constitutions to provide broader rights than guaranteed under the United States Constitution. *PruneYard*, 447 U.S. at 81, 100 S.Ct. 2035. The pertinent language of Section 4 reads, "Every man may freely write, speak and publish his opinions on all subjects, being responsible for the abuse of that privilege." N.D. Const. Art. I, § 4. Section 5, in turn, states, "The citizens have a right, in a peaceable manner, to assemble together for the common good, and to apply to those invested with

the powers of government for the redress of grievances, or for other proper purposes, by petition, address or remonstrance." *Id.* at § 5.

A comparison of Sections 4 and 5 to the enumerated rights in the First Amendment of the federal Constitution displays analogous language. Fundamentally, Sections 4 and 5 exist coextensively with the First Amendment. Furthermore, the North Dakota Supreme Court has held that it will not extend the rights under Article I, Section 4 any further than guaranteed under the First Amendment of the federal Constitution. *Dickinson Newspapers, Inc. v. Jorgensen*, 338 N.W.2d 72, 79 (N.D.1983). The court also held that the opinions of the United States Supreme Court on free speech rights have "full application to this state." *Id.* The court also pointed out that the only true difference between section 4 and the First Amendment is the caveat in Article I, Section 4, which provides that "persons who write, speak, and publish their opinions are '. . . responsible for the abuse of that privilege.'" *Id.*

The court's reasoning for Section 4 can be applied to Section 5 also because "the right of petition is no more sacred than is the right of free speech." 16B C.J.S. Constitutional Law § 612. Additionally, Justice Meschke reminds us that both the Bill of Rights in the federal Constitution and the Declaration of Rights in the North Dakota Constitution "guarantees an individual's rights against government action." *Levey*, 533 N.W.2d at 711. The conclusion is that Sections 4 and 5 of the Declaration of Rights do not guarantee any additional rights than granted by the First Amendment of the Bill of Rights. Therefore this Court must refrain from applying Sections 4 and 5 any more broadly than the United States Supreme Court has applied the First Amendment in similar cases. As

this Court has already held above, the First Amendment of the federal Constitution does not give a person rights of free expression on private property. Therefore the North Dakota Constitution does not give Plaintiff the right to petition on Defendant's private property.

## IV.  DECISION

For the reasons set forth above, the Court grants the Defendant summary judgment as to all claims.

IT IS SO ORDERED.