REQUESTED BY: Senator Michael J. Flood
Speaker of the Nebraska Legislature
In a letter to the Attorney General, you indicated that you are contemplating the introduction of "legislation that would amend the existing statutes dealing with criminal and civil trespass." You indicated further that it has come to your attention that there is concern about the activities of initiative petition circulators and "blockers" on private property in Nebraska. In that context, you asked for an Attorney General's opinion "as to whether or not petition circulators and `blockers' have a constitutional right to remain on private property once they have been asked to leave by property owners or managers."
The primary constitutional question at issue in your opinion request is whether or not the rights to freedom of speech and assembly found in the United States and Nebraska Constitutions are implicated when the owner or manager of
private property prohibits petition circulators and "blockers" from engaging in their activities on that private property. In other words, do petition circulators and "blockers" have a right under theFirst Amendment or art. I, § 5 of the Nebraska Constitution to continue their activities on private property after the owner or manager of that property has asked them to leave?
For purposes of this opinion we assume that "petition circulators" are individuals acting under the initiative and referendum provisions of the Nebraska Constitution, Neb. Const. art. III, §§ 1-4, who solicit and gather the signatures of registered voters on petitions so as to place measures on the ballot adopting new laws, amending the Nebraska Constitution, or revoking laws passed by the Legislature. We also assume that "blockers" are individuals who appear at locations where petition circulators are gathering signatures and seek to dissuade people from signing the petitions.
ANALYSIS
United States Constitution
So long as petition circulators and "blockers" engage in their activities peacefully, those activities of soliciting signatures and seeking to dissuade signatures are considered to be core political speech which is generally protected from governmental interference by the First and Fourteenth Amendments. See, Meyer v. Grant, 486 U.S. 414,421-22 (1988); Buckley v. American Constitutional Law Foundation,525 U.S. 182, 199 (1999); Bernbeck v. Moore, 936 F.Supp. 1543, 1561 (D. Neb. 1996), aff'd 126 F.3d 1114 (8th Cir. 1997).
The United States Supreme Court has made clear, however, that theFirst and Fourteenth Amendments protect the rights of free speech and assembly from governmental interference only; not from interference by owners of private property. In Lloyd Corporation, Ltd. v. Tanner,407 U.S. 551 (1972), Vietnam War protesters sought to enter a large, privately-owned shopping center to distribute handbills critical of the war. They were prohibited from doing so by the owner of the shopping center which had a policy against distributing handbills on the property which were not related to the shopping center's operations. The lower courts found in favor of the protesters and enjoined the shopping center from prohibiting the handbilling. The Supreme Court reversed, holding that the First and Fourteenth Amendments do not apply to guarantee the rights of free speech and assembly on private property. In doing so the Court stated:
The basic issue in this case is whether respondents, in the exercise of asserted First Amendment rights, may distribute handbills on Lloyd's private property contrary to its wishes and contrary to a policy enforced against all handbilling. In addressing this issue, it must be remembered that the First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on state action, not on action by the owner of private property used nondiscriminatorily for private purposes only. The Due Process Clauses and Fifth andFourteenth Amendments are also relevant to this case. They provide that `(n)o person shall . . . be deprived of life, liberty, or property, without due process of law.' There is the further proscription in theFifth Amendment against the taking of `private property . . . for public use, without just compensation.'
Although accommodations between the values protected by these three Amendments are sometimes necessary, and the courts properly have shown a special solicitude for the guarantees of the First Amendment, this Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only.
Id., 407 at 567-68. (Emphasis supplied.)
Subsequently, in Hudgens v. National Labor Relations Board,424 U.S. 507 (1976), the Court made clear that Lloyd had, in effect, overruled an earlier decision, Amalgamated Food Employees Union v. Logan Valley Plaza, 391 U.S. 308 (1968), which suggested that the owners of a shopping center could not bar peaceful labor picketing on its privately owned property.
[W]e make clear now, if it was not clear before, that the rationale of Logan Valley did not survive the Court's decision in the Lloyd case. Not only did the Lloyd opinion incorporate lengthy excerpts from two of the dissenting opinions in Logan Valley . . .; the ultimate holding in Lloyd amounted to a total rejection of the holding in Logan Valley.
Hudgens, 424 U.S. at 518. (Citation and footnotes omitted.) The Hudgens Court concluded that "under the present state of the law the constitutional guarantee of free expression has no part to play in a case such as this [involving labor picketing in front of a store located in a privately owned shopping center]." Id. at 521. See also, Pruneyard Shopping Center v. Robins, 447 U.S. 74, 80-81 (1980)
(again explaining that Lloyd repudiated the rationale of Logan Valley to the extent that Logan Valley had concluded that because a privately owned shopping center was open to the public free speech rights necessarily applied to the property).
Citing the Hudgens decision, the Eighth Circuit Court of Appeals has recently set forth the basic rule succinctly: "The first Amendment guarantee of free speech guards against abridgment through state action alone. It does not inhibit private restrictions on speech." Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir.), cert. denied sub nom Memorial Weekend Salute to Veterans Corp v. Wickersham, 128 S.Ct. 387
(2007). See, Reimers v. Super Target of Grand Forks,363 F.Supp. 2d 1182, 1185 (D. N.D. 2005) (noting that in Pruneyard Shopping Center the Supreme Court "reiterated that the federal constitution did not grant First Amendment rights on private property. . . .").
Based on the foregoing review of pertinent case authorities, we conclude that the federal constitutional guarantees of free speech and assembly do not apply on privately owned property used nondiscriminatorily for private purposes only, and that, therefore, petition circulators and "blockers" do not have a federal constitutional right to remain on such private property when asked by its owner to leave.
Nebraska Constitution
The constitutional guarantee of free speech in Nebraska is found in art. I, § 5 of the Nebraska Constitution. However, the Nebraska Supreme Court has repeatedly and consistently held that the guarantee of freedom of speech under the Nebraska Constitution is the same as the guarantee of freedom of speech under the First Amendment to the United States Constitution. Pony Lake School District 30 v. State Committee for the Reorganization of School Districts, 271 Neb. 173, 710 N.W.2d 609
(2006); Dossett v. First State Bank, 261 Neb. 959, 627 N.W.2d 131 (2001); State v. Moore, 258 Neb. 738, 605 N.W.2d 440 (2000); Pick v. Nelson,247 Neb. 487, 528 N.W.2d 309 (1995). Moreover, in order to bring a claim for violation of the free speech provision in art. I, § 5 of the Nebraska Constitution, the alleged violation must involve state action. Dossett v. First State Bank, 261 Neb. at 967, 627 N.W.2d at 138 (2001). That state action requirement also formed part of the basis for the decision in the Hudgens case cited above, where the United States Supreme Court found that the First Amendment did not apply to the actions of a private commercial property owner. As a result, while there are no Nebraska cases directly on point, we do not believe that art. I § 5 of the Nebraska Constitution creates a state constitutional right for petition circulators or "blockers" to remain on private property and continue their activities after the owner has asked them to stop.
Apart from state constitutional provisions dealing with free speech, some courts from other jurisdictions have found a state constitutional right to engage in political activity including solicitation of signatures on private commercial property based upon state constitutional provisions dealing with free elections or the initiative and referendum right. Batchelder v. Allied Stores International, Inc.,388 Mass. 83, 445 N.E.2d 590 (1983) (holding that an individual had a constitutional right to solicit signatures in support of his nomination as a third party candidate in the mall of a large shopping center without the owners' permission based upon free elections provision in the state constitution); Alderwood Associates v. Washington Environmental Council, 96 Wash.2d 230, 635 P.2d 108 (1981) (determining that the initiative provisions in the state constitution gave individuals the right to solicit initiative signatures in a large regional shopping mall without permission of mall owners). However, those cases are older cases dealing with the common, public areas of shopping malls. More recent cases have reached a different conclusion. Stranahan v. Fred Meyer, Inc., 331 Or. 38, 11 P.3d 228 (2000) (ruling that the state constitutional right to initiate laws and constitutional amendments does not confer the right to solicit signatures for initiative petitions on private property over the owner's objection); People v. DiGuida, 152 Ill.2d 104, 604 N.E.2d 336 (1992) (stating that the invocation of a criminal trespass statute to exclude the circulator of a political nominating petition from a private store's premises did not violate free elections provisions in the Illinois Constitution); Fiesta Mall Venture v. Mecham Recall Committee, 159 Ariz. 371,767 P.2d 179 (1989) (holding that a recall committee did not have a constitutionally protected right to solicit signatures on private property under the initiative, referendum and recall provisions of the Arizona Constitution); Woodland v. Michigan Citizens Lobby,423 Mich 188, 378 N.W.2d 337 (1985) (determining that constitutional provisions with respect to initiating legislation and amending the state constitution did not prohibit owners of large private malls from denying or restricting access to private individuals seeking to exercise those rights). Consequently, while art. I, § 22 and art. III, §§ 2,3 and 4 of the Nebraska Constitution provide for free elections and initiative and referendum rights in Nebraska, we do not believe it likely that our supreme court would hold that those provisions create a state constitutional right to conduct petition circulation or "blocking" activities on private commercial property contrary to the owner's wishes.
CONCLUSION
For the various reasons discussed above, we do not believe that petition circulators and "blockers" have either a federal or state constitutional right to remain on private property which is used nondiscriminatorily for private purposes when asked by the owner or manager of that property to leave. As a result, owners of private property in Nebraska which is used for private purposes may generally prohibit petition circulators and "blockers" from conducting such activities on their property.
Sincerely,
JON BRUNING Attorney General
Dale A. Comer Assistant Attorney General
Charles E. Lowe Assistant Attorney General
Approved by:
___________________________ Attorney General