Burr v. Kulas, 1997 ND 98, 564 N.W.2d 631|N.D. Supreme Court|
Burr v. Kulas, 1997 ND 98, 564 N.W.2d 631
[Go to Documents]
Filed June 3, 1997
Concurrence Filed .
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
1997 ND 98
Joyce Burr, Plaintiff and Appellant
v.
Cheryl Kulas and Donald K. Lemon, Ph.D., Defendants and Appellees
Civil No. 960384
Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Dennis A. Schneider, Judge.
REVERSED AND REMANDED.
Opinion of the Court by VandeWalle, Chief Justice.
Irvin B. Nodland, 109 North 4th, Suite 300, P.O. Box 640, Bismarck, ND 58502-0640, for plaintiff and appellant. David E. Reich (argued) and Gary A. Thune, Special Assistant Attorneys General, Pearce and Durick, P.L.L.P., 314 East Thayer Avenue, P.O. Box 400, Bismarck, ND 58502-0400, for defendant and appellee Donald K. Lemon. Douglas A. Bahr, Assistant Attorney General, Attorney General's Office, 900 East Boulevard Avenue, Bismarck, ND 58505-0041, for defendant and appellee Cheryl Kulas.
Burr v. Kulas, et al.
Civil No. 960384
VandeWalle, Chief Justice.
[¶1] Joyce Burr appealed from the trial court's summary judgment dismissing her action against Cheryl Kulas and Donald Lemon on the ground it was time barred. Burr contends the trial court erred in applying a three-year statute of limitations. She argues, under North Dakota's Racketeer Influenced and Corrupt Organization Act (RICO), N.D.C.C. Ch. 12.1-06.1, the trial court should not have applied a three-year statute of limitations. We agree and we reverse and remand for trial.
[¶2] In 1988, Burr was a graduate student at the University of North Dakota (UND) in Grand Forks, working towards a Ph.D. Her proposed doctoral thesis was to center on the impact of North Dakota educational regulations requiring specific credit hours dedicated to Native American studies. To aid in her research, Burr designed a questionnaire to be sent to North Dakota educators. This questionnaire, both on paper and computer diskette, was stored in her office provided by UND. In late 1988, Burr became ill with a kidney disorder which forced her to temporarily suspend her studies at UND. Burr received a kidney transplant and was treated at a hospital in Minneapolis, Minnesota.
[¶3] During this time, Burr contends, Dr. Richard Landry, a UND faculty member, instructed a secretary to enter Burr's office and take the questionnaire, copy it, and return the original, all without Burr's authorization. The defendants state Dr. Landry met with Cheryl Kulas, the Director of Bilingual Education for the Department of Public Instruction (DPI), and discussed a proposed study of the impact of the Indian Studies curriculum requirement imposed on all teachers in North Dakota schools. The defendants contend UND, with the assistance of the Bureau of Educational Services and Applied Research (BESAR), agreed to assist in the survey.
[¶4] Landry provided Kulas with survey forms to aid in her collection of research data. Included in these materials was Burr's questionnaire. Kulas was not told the form was Burr's, but Kulas nevertheless thought it might be because she was aware of Burr's research. Landry spoke with Dr. Donald Lemon, Burr's faculty advisor, about Burr's questionnaire, and Lemon informed Landry that Burr was unavailable, but did give Landry permission to use Burr's survey with the understanding she could use the research collected for her dissertation. Lemon states he had no contact with Kulas nor did he know Kulas was the party at DPI who was responsible for the project. Kulas used all the survey forms, including Burr's questionnaire, to complete her research. Landry, using this research, completed and published the report. Kulas also used the materials to complete her Master's thesis at the University of Arizona.
[¶5] In 1990, Burr met with Lemon, Landry and the Dean of UND's Center for Teaching and Learning to discuss the use of her questionnaire. Burr contends she intended to complete her dissertation, but she alleges she was informed it would need to be altered to ensure creative originality. Burr eventually left school, and never completed her thesis.
[¶6] Burr filed suit against Lemon and Kulas(1) in 1993, alleging the defendants conspired to steal the survey and hold it out as their own work. Burr also alleged the defendants committed a RICO act in violation of N.D.C.C. Ch. 12.1-06.1, and further alleged Burr was entitled to exemplary damages. Lemon and Kulas moved for summary judgment and the trial court dismissed all the claims on grounds of sovereign immunity. Burr appealed to this Court, and we affirmed the dismissal of the claims against Lemon and Kulas in their official capacity, but reversed and remanded for trial of the claims against Lemon and Kulas personally. Burr v. Kulas, 532 N.W.2d 388 (N.D. 1995).
[¶7] On remand, Kulas and Lemon, separately, moved for summary judgment. Both claimed the statute of limitations had run on Burr's claim and Burr had not established a recognizable RICO claim. Lemon, individually, claimed he was entitled to statutory immunity. The trial court granted the defendants' motions citing N.D.C.C. § 28-01-22.1 and dismissed Burr's claims.
I
[¶8] Summary judgment is appropriate when, if after viewing all the evidence in a light most favorable to the non-moving party, there is no genuine issue of material fact. Rule 56(c), N.D.R.Civ.P.; Richmond v. Nodland, 552 N.W.2d 586, 588 (N.D. 1996); Rued Ins., Inc., v. Blackburn, Nickles & Smith, Inc., 543 N.W.2d 770, 773 (N.D. 1996); Stewart v. Ryan, 520 N.W.2d 39, 42-43 (N.D. 1994). When no genuine issue of material fact exists, the claim can be dismissed as a matter of law. Herzog v. Yuill, 399 N.W.2d 287, 289 (N.D. 1987). We will not overturn a trial court's decision unless it erred as a matter of law. Ertelt v. EMCASCO Ins. Co., 486 N.W.2d 233, 234 (N.D. 1992).
II
[¶9] Burr contends the trial court applied the wrong statute of limitations in dismissing her claims. North Dakota's RICO statute provides, in relevant part: "Notwithstanding any law to the contrary, the initiation of civil proceedings related to violations of any offense included in the definition of racketeering or a violation of section 12.1-06.1-03 shall be commenced within seven years of actual discovery of the violation." N.D.C.C. § 12.1-06.1-05(7) (emphasis added). Reading this provision alone, it would be clear Burr, by filing her claim in 1993, 3 years after actual discovery of the act, was within the statute of limitations for the RICO claim. The trial court, however, concluded the three-year statute of limitations of N.D.C.C. § 28-01-22.1 applied. Section 28-01-22.1 states:
"When not otherwise specifically provided by law, an action against the state or its employees and officials acting within the scope of their employment or office must be commenced within three years after the claim for relief has accrued. For purposes of this section, the claim for relief is deemed to have accrued at the time it is discovered or might have been discovered in the exercise of reasonable diligence. This may not be construed as a waiver of immunity."
The trial court believed this statute of limitations applied, for "[a] conspiracy, civil or criminal, requires an act. The 'act' here had to be the self-same 'theft.' The 'theft' occurred in March 1989 and since the lawsuit was not started until June 1993 it is time barred . . . ."
[¶10] We specifically directed in our first appeal that the matter be remanded for further proceedings with regard to the claims against Lemon and Kulas individually, in their personal capacities. Burr, 532 N.W.2d at 394. We stated:
"We conclude that the trial court properly dismissed any claims against the State or against Kulas and Lemon in their official capacities on the ground of sovereign immunity.
Burr's RICO claims against Kulas and Lemon, individually, and their immunity defenses, however, involve genuine issues of material fact precluding summary judgment." Id. at 392 (emphasis added). Moreover, we recognized there were factual questions which remained regarding whether Lemon and Kulas,
"knowingly took, exercised unauthorized control over, made an unauthorized transfer of, obtained, received, retained, or disposed of Burr's property with intent to deprive Burr of her property, or if Lemon or Kulas engaged in computer fraud . . . [and] whether Lemon's and Kulas's activities with regard to Burr's intellectual property constituted reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct, exposing them to possible personal liability under § 32-12.1-15(2), N.D.C.C., because their conduct was not within the scope of their employment under § 26.1-21-10.1(1)(b), N.D.C.C."(2) Burr, 532 N.W.2d at 394 (emphasis added). The three-year limitation in Section 28-01-22.1 applies to a state employee acting within the scope of his or her employment.
[¶11] A state employee cannot be held personally liable for acts committed within the scope of employment, "unless such actions or omissions constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct." N.D.C.C. § 32-12.1-15(2) (emphasis added). Thus, even when a public employee is acting within the scope of employment, the employee is not always immune from suit. When a public employee is acting within the scope of his or her employment, but behaves in a reckless, grossly negligent, or willful or wanton manner, the employee may be personally liable. N.D.C.C. § 32-12.1-15(2). Questions such as knowledge, intent, negligence, and state of mind are generally questions of fact. Burr, 532 N.W.2d at 393 (citations omitted). Factual questions, when material and in dispute, generally preclude summary judgment, Moen v. Meidinger, 547 N.W.2d 544, 547 (N.D. 1996).
[¶12] Burr contends there is another statute of limitation which applies, i.e., she is entitled to the seven-year statute of limitation in the RICO statute, § 12.1-06.1-05(7). We agree. Section 28-01-22.1, by its own terms, applies only "[w]hen not otherwise specifically provided by law . . . ." Furthermore, if there is a question of which statute of limitation applies, generally the longer time will be applied. Matter of Estate of Stirling, 537 N.W.2d 554, 558 (N.D. 1995).
[¶13] In 1970, Congress enacted the Organized Crime Control Act, whose Title IX is the Racketeering Influenced and Corrupt Organizations Act. Organized Crime Control Act of 1970 Pub.L. No. 91-452, 84 Stat. 922 (1970). The statute's sponsors originally drafted the legislation to serve as a powerful tool to financially eviscerate organized crime. The Supreme Court, 1993 Term - Leading Cases, 108 Harv. L. Rev. 139, 351 (1994). See U.S. v. Turkette, 452 U.S. 576, 589 (1981) (stating the goal of the RICO statute was the "eradication" of organized crime in the United States). To effect that goal, RICO provided for both criminal penalties of imprisonment, fines, and forfeitures, as well as "a far-reaching civil enforcement scheme," which allowed for civil suits between private parties with the possibility of treble damage recovery. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 483 (1985). Following the enactment of the federal law, several states adopted "little RICO" statutes which were patterned after the federal statute, or "criminal syndicate" statutes, and which, although similar in purpose to the federal RICO law, differed in their applicability. See Michelle J. Stahl, Comment, Oscar v. University Students Cooperative Ass'n: Can citizens Use RICO to Rid Neighborhoods of Drug Houses?, 67 Notre Dame L.Rev. 799, 803-804 (1987); see also North Dakota Senate Judiciary Committee, 1987 Senate Standing Committee Minutes of SB 2449, (Feb. 11, 1987) (testimony of Robert Bennett, Assistant Attorney General) (1987 Senate Committee Minutes).
[¶14] North Dakota's RICO statute, N.D.C.C. Ch. 12.1-06.1, as it was originally enacted, required only one act to serve as a basis for both criminal and civil liability under the statute. N.D.C.C. § 12.1-06.1-01(2)(d) (1983). In this manner, the statute is a "criminal syndicate" type statute rather than a mirror of federal law. 1987 Senate Committee Minutes. In 1987, the legislature considered an entire repeal of the chapter, largely because of the ease in which suits could be brought against many legitimate businesses, such as banks and other financial institutions. 1987 Senate Committee Minutes. However, rather than repeal the entire statute, the legislature chose to amend the act. The legislature amended the act to require a "pattern of racketeering activity" to create liability. N.D.C.C. § 12.1-06.1-01(2)(d) (Supp. 1995). "Pattern of racketeering activity" is defined as, "at least two acts of racketeering activity, one of which occurred after July 8, 1987, and the last of which occurred within ten years, excluding any period of imprisonment, after the commission of a prior act of racketeering activity." N.D.C.C. § 12.1-06.1-01(2)(d). In using this definition, North Dakota's RICO statute now more closely resembles federal law. Because this is a case of first impression with this Court, we look to federal case law for assistance. SeeTormaschy v. Tormaschy, 1997 ND 2, ¶14, 559 N.W.2d 813, 816; Thompson v. Peterson, 546 N.W.2d 856, 860 (N.D. 1996).
[¶15] Federal law, like North Dakota's amended RICO statute, defines a "pattern of racketeering" which "requires at least two acts of racketeering activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]" 18 U.S.C. § 1961(5); First National Bank and Trust Co. v. Hollingsworth, 931 F.2d 1295, 1303 (8th Cir. 1991) (citing Sedima, S.P.R.L., 473 U.S. 479).
[¶16] The United States Supreme Court has stated a "pattern of racketeering activity" is established when there are the required two acts and "that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240 (1989) (emphasis original). It is not merely enough to have two acts to establish a pattern, for "[i]t is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.'" Id. at 238. The pattern or racketeering activity is not established by "sporadic activity," rather, "'[t]he term "pattern" itself requires the showing of a relationship' between the predicates and of 'the threat of continuing activity'" for it is "'this factor of continuity plus relationship which combines to produce a pattern.'" Id. at 239 (quoting S.Rep. No. 91-617 at 158 (1969)) (emphasis added by U.S. Supreme Court). Thus, under federal law, for a legitimate RICO "pattern of racketeering activity," there needs to be two or more predicate acts, defined as violations in the statute, which demonstrate a threat of continued racketeering activity. H.J., Inc., 492 U.S. at 240. Whether particular proven acts establish a threat of continued racketeering activity is a question of fact and is determined on a case by case basis. Id. at 242.
[¶17] Here, Burr argues Lemon's and Kulas's actions amount to a pattern of racketeering. First, Burr alleges Kulas knowingly, without authorization, accessed Burr's computer data in violation of N.D.C.C. § 12.1-06.1-08, and in doing so committed fraud, which is a "predicate act" included in the RICO statute. N.D.C.C. § 12.1-06.1-01(2)(e)(15). Moreover, Burr contends Kulas's use of the survey to enhance her own professional status, on several occasions and through several different mediums, constitutes the required second act. Burr further alleges Lemon was involved with the theft and is liable as well.
[¶18] Furthermore, to establish a cognizable RICO claim, Burr must establish two predicate acts. Although these could, as Burr contends, be Kulas's and Lemon's theft of the survey instrument and the computer theft under N.D.C.C. § 12.1-06.1-08,(3) whether alleged acts amount to a pattern of racketeering activity is a question of fact. H.J., Inc., 492 U.S. at 242. Lemon's and Kulas's contention they did not commit theft or use Burr's material improperly is not enough to sustain a grant of summary judgment. Lemon and Kulas must present evidence which demonstrates why Burr's complaint does not state a predicate act. Handeen v. Lemaire, F.3d (8th Cir. 1997).
[¶19] As we observed in Burr v. Kulas, there are factual issues to be resolved. 532 N.W.2d at 394. Because the trial court erred in granting summary judgment, we reverse and remand for trial of those issues.
[¶20]
Gerald W. VandeWalle, C.J.
Herbert L. Meschke
Mary Muehlen Maring
William A. Neumann
Dale V. Sandstrom
Sandstrom, Justice
, concurring.
[¶21] I agree with the majority opinion, but write separately to emphasize what may not be sufficiently clear in ¶¶17-18. A "pattern of racketeering activity" requires two separate acts, each of which is separately chargeable or indictable as provided by law. SeeN.D.C.C. § 12.1-06.1-01 (2)(d) and (e). It is not sufficient that a single act could be charged as two different crimes. Id. Nor is it sufficient that two or more "actions" are part of a single "criminal act." Id.
[¶22]
Dale V. Sandstrom
Footnotes:
1. A separate action was instituted against Landry.
2. For purposes of providing defense counsel for state employees acting within the scope of their employment, as defined by, § 26.1-21-10.1(1)(a),
"'[s]cope of employment' means the state employee was acting on behalf of the state in the performance of duties or tasks lawfully assigned to the employee by competent authority. Actions of a state employee which constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct are not within the scope of the employee's employment for purposes of this chapter."
Section 26.1-21-10.1(2), N.D.C.C., provides, in part, "[t]he determination of whether a state employee was acting within the scope of the employee's employment must be made by the attorney general." 3. Burr, in her brief, alleged Lemon conspired with Kulas to commit theft. It is possible for conspiracy to commit a RICO violation to be included as a predicate act. See U.S. v. Phillips, 664 F.2d 971, 1015 (5th Cir. 1981) (holding a conspiracy to commit an act enumerated in the RICO statute can be counted as a predicate act and used to establish a pattern of racketeering activity). A civil conspiracy is defined as,
"a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an over act that results in damage."
Larson by Larson v. Miller, 76 F.3d 1446, 1458 (8th Cir. 1996) (Gibson, J., concurring and dissenting)(citing Rotermund v. United States Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973)). See also Vom Lehn v. Astor Art Galleries, Ltd., 380 N.Y.S.2d 532, 538 (N.Y. Sup.Ct. Part IV, 1976); 16 Am.Jur. 2d, Conspiracy, §§ 50-53. Because Burr never argued the alleged conspiracy amounts to a predicate act and because the trial court never made a finding on whether Lemon and Kulas actually did conspire to steal Burr's material, we do not decide the issue here.