Denise **BURK**, as Trustee for the next of kin of Brian Joseph Burk, Plaintiff,

v.

**THORSON, INC.**, a Minnesota corporation, Donald Edward Longtin, Randy's Frozen Meats, a partnership, and its owners Randy Creasman, Inc., an Iowa corporation, Neal E. Gragg, Inc., a Minnesota corporation, RGS Enterprise Incorporated, a Minnesota corporation, Gary W. Creasman, Inc., an Iowa corporation, Raymond L. Gragg, Inc., an Iowa corporation, and Jon Welhorn, Defendants.

No. Civ. 97–2940JMR/RLE.

United States District Court,
D. Minnesota.

June 30, 1999.

William Henry Manning, Brad Phillip Engdahl, Patricia Yoedicke, Tobins Kaplan Miller & Ciresi, Minneapolis, MN, for plaintiff.

Michael D. Hutchens, Jennifer Elizabeth Ampulski, Meagher & Geer, Minneapolis, MN, for Thorson, Inc., defendant.

James Thomas Martin, Dan Thomas Ryerson, Gislason Martin & Varpness, Edina, MN, for Donald Edward Longtin, John Doe, Randy's Frozen Meats, Inc., defendants.

## ORDER

ROSENBAUM, District Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, it is—

ORDERED:

That Thorson, Inc.'s Motion for Summary Judgment [Docket No. 21] is denied.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Motion of Thorson, Inc. ("Thorson") for Summary Judgment. A Hearing on the Motion was conducted on February 10, 1999, at which time, the Plaintiff appeared by William H. Manning, Esq., Thorson appeared by Michael D. Hutchens, Esq., and the other Defendants, who did not join in Thorson's Motion, did not appear.

For reasons which follow, we recommend that Thorson's Motion for Summary Judgment be denied.

### II. *Factual and Procedural History*

This action arises from a fatal, head-on collision between a vehicle driven by the

Plaintiff's decedent, Brian Joseph Burk ("Burk"), and a semi-tractor trailer that was driven by an employee of Randy's Frozen Meats, Inc. ("Randy's Frozen Meats"). The accident occurred August 26, 1996, on U.S. Highway 2, in a road construction zone in which Thorson was responsible for traffic control. The Plaintiff, who has been appointed under Minnesota law, as the Trustee of Burk's heirs in order that this wrongful death action may be prosecuted, claims that the Defendants' negligence proximately caused the accident. As a consequence, the Plaintiff commenced this diversity action seeking damages in excess of $75,000.

The factual backdrop to this Motion commences in 1995, when Thorson contracted with the State of Minnesota to widen a portion of U.S. Highway 2, in Hubbard County, Minnesota. Thorson was retained to widen the roadway from a two-lane highway to a four-lane divided thoroughfare. As of August 27, 1996, Thorson had paved a new two-lane section of the east-west section of Highway 2, which extends between Cass Lake and Bemidji, Minnesota, that had not been opened, as yet, to traffic. *Deposition of Bruce Zietz* at 16, *Affidavit of Patricia Yoedicke, Ex.* D; *Deposition of Lynn Eaton* at 15–16, *Yoedicke Aff., Ex.* E. At the eastern terminus of the new section of roadway, the road merged with Highway 2, forming what would appear to be a "Y" intersection, from the vantage point of westbound drivers. *Photograph of Westbound Highway 2 Approaching the "Y", Deposition of Nancy McGuire, Ex.* 1, *Yoedicke Aff., Ex.* F. However, as the new lanes had not been opened to traffic, eastbound drivers continued to travel in the southernmost lane of the old section of Highway 2.

Thorson took certain steps so as to indicate, to westbound travelers, that the new lanes were still closed, and to prevent them from proceeding into the left lane in the mistaken belief that they would be traveling in a divided, four-lane highway. For instance, Thorson placed orange barrels along the south side of Highway 2,

which extended westward to the fork in the road, ostensibly blocking the unopened lanes, which branched off to the south, form traffic. In addition, Thorson painted a temporary, dashed yellow line down the middle of Highway 2, which would signal that the roadway continued to carry two-way traffic. See, *Diagrams of Construction Site and Accident, Deposition of Trooper Harold Marty, Ex.* 12, *Affidavit of Jennifer E. Ampulski, Ex.* C.

Burk, who was driving a 1994 GMC van, approached the construction zone from the east, on August 27, 1996, at approximately 7:00 o'clock in the evening, with the sun setting in front of him. He was traveling to Canada for a tryout with a Canadian Junior League hockey team, and he had been driving since shortly before noon, having spent the night at his aunt's home in the Upper Peninsula of Michigan. According to his aunt, Burk got ten hours of sleep, and he appeared well-rested when he left her residence. *Affidavit of Laurie Turner–Lynch* ¶ 2–3.

As he approached the "Y" intersection, Burk was closely following a Frito–Lay delivery truck, which was being driven by Bruce Zietz ("Zietz"). Zietz looked in his side-view mirror and saw Burk wave to him, and then back off to a "comfortable [following] distance," behind the Frito Lay truck. *Deposition of Bruce Zietz* at 6–7, *Yoedicke Aff., Ex.* D. For the next ten minutes, as the two vehicles traveled the five or six miles to the construction site, Burk's van maintained a constant distance behind Zietz, and made no attempt to pass. *Id.* at 7–10.

When Zietz entered Thorson's construction site, where the newly paved lanes branched off, he passed over a bump in the road at the point where the Highway began to widen, and he passed a Randy's Meats semi-truck which was heading east. *Zietz Depo.* at 16–17. Zietz looked back, by means of his side-view mirror, and saw Burk pull into the left hand lane, heading into the oncoming traffic—specifically, the Randy's Meats truck. *Id.* With head-on

impact imminent, both Burk and Donald Longtin ("Longtin"), who was the driver of the semi-truck, simultaneously moved into the westbound lane. As a consequence, despite their mutual efforts to avoid each other, the vehicles of Burk and Longtin collided, with the point of impact occurring at the spot where the new lanes split off. Burk died at the hospital and, given the catastrophic nature of his injuries, he never had an opportunity to say why he changed lanes when he did. See, *Deposition of Scott LaCoursiere* at 8–13, *Yoedicke Aff., Ex.* I.

In pursuing this action against Thorson, the Plaintiff maintains that Burk changed lanes because he became confused at the "Y" intersection, and that Thorson, by not taking sufficient measures to warn drivers that two-lanes of traffic continued, is liable for negligence. She contends that Thorson should have, in the exercise of due care: (1) maintained a double yellow center line, which would have kept westbound drivers in the far right lane; (2) placed a "Road Closed" sign, and a Type III barricade at the fork in the road; (3) eliminated the continuous white edge along the south side of Highway 2, which curved outward so as to follow the contour of the divided section of highway; and (4) placed more orange barrels along Highway 2 in order to create a more contiguous' barrier between the main thoroughfare and the unopened section of road. For purposes of its Summary Judgment Motion, Thorson does not contest that it should have taken these steps, consistent with the duty of care it owed to motorists who were passing through its construction area. See, *Thorson's Mem.Supp.Summ.J.* at 5 n. 1. Rather, in support of its Motion, Thorson only argues that there is no evidence which demonstrates that its negligence proximately caused Burk's death, since there is no evidence that Burk was confused by Thorson's marking of the highway.

### III. *Discussion*

A. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfa-

vored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. *Carter v. St. Louis Univ.,* 167 F.3d 398, 400 (8th Cir.1999); *Prudential Ins. Co. v. National Park Med. Center, Inc.,* 154 F.3d 812, 818 (8th Cir.1998). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Liebe v. Norton,* 157 F.3d 574, 578 (8th Cir.1998); *Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure;* see also, *Anderson v. Liberty Lobby, Inc.,* supra at 256, 106 S.Ct. 2505; *Chism v. W.R. Grace & Co.,* 158 F.3d 988, 990 (8th Cir.1998). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra at 322, 106 S.Ct. 2548; see also, *Greer v. Shoop,* 141 F.3d 824, 826 (8th Cir.1998); *Mayard v. Hopwood,* 105 F.3d

1226, 1228 (8th Cir.1997). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, supra at 323, 106 S.Ct. 2548; see also, *Bell Lumber and Pole Co. v. United States Fire Ins. Co.*, 60 F.3d 437, 441 (8th Cir. 1995); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross*, 992 F.2d 162, 163 (8th Cir. 1993).

■■■ B. *Legal Analysis*. As noted, the Plaintiff's claim against Thorson sounds in negligence, under the common law of Minnesota. Under Minnesota law, the necessary elements of actionable negligence are: "(1) a duty; (2) breach of that duty; (3) a causal connection between the breach and injury; and (4) injury in fact." *Johnson v. State*, 553 N.W.2d 40, 49 (Minn. 1996), citing *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982); see also, *Casa de Cambio Comdiv, S.A. De C.V. v. Federal Reserve Bank of Minneapolis*, 115 F.3d 618, 620 (8th Cir.1997). As a general proposition, Summary Judgment is rarely appropriate in a negligence action because such a claim often encompasses a multitude of factual issues, and abstract concepts which become particularly elusive when applied to varying concrete situations. *Hughes v. American Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir.1976); see also, *Teas v. Minneapolis Street Ry. Co.*, 244 Minn. 427, 434, 70 N.W.2d 358, 363 (Minn. 1955) (negligence to be determined as a question of law "only in the clearest of cases"); *Zimprich v. Stratford Homes, Inc.*, 453 N.W.2d 557, 560 (Minn.App.1990). As pertinent to the issues in this case, "whether the defendant's negligence proximately caused the plaintiff's injuries is [ordinarily] a question of fact for the jury." *Canada v. McCarthy*, 567 N.W.2d 496, 506 (Minn.1997). It is only when reasonable minds can reach but one conclusion, that the existence of proximate cause is an issue of law. *Id.*

The only direct evidence that informs the question of proximate cause—that is, whether Burk changed lanes because he was confused by the "Y" intersection and Thorson's inadequate warnings—vanished with Burk's death. As Thorson points out, only Burk could say whether he changed lanes because he mistakenly thought that the left lane was open to westbound traffic, as opposed to some other reason. Thus, Thorson argues that there has been a complete failure of proof on the issue of proximate cause, see, *Celotex Corp. v. Catrett*, supra at 323, 106 S.Ct. 2548, and cites the principle that, "[w]here the evidence is such that a trier of fact can do no more than guess or conjecture as to which of several acts was in fact the efficient cause, the plaintiff has failed to prove that the defendant's breach caused the injury." *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn.1990); see also, *Abbett v. County of St. Louis*, 474 N.W.2d 431, 434 (Minn. App.1991) (affirming directed verdict in driver's action claiming county's negligence in not installing guardrail, where jury could only speculate that lack of guardrail proximately caused driver's injuries).

Thorson premises its Motion, therefore, on the fact that Burk could have changed lanes because he: (1) fell asleep at the wheel; (2) was not paying attention to the road; (3) was blinded by the setting sun; (4) was attempting to pass Zietz's truck; or (5) did not know where he could legally drive. As all of these possibilities could explain Burk's accident and, since there is no direct evidence of Burk's state of mind at the time of the accident, Thorson urges that the evidence does not support a reasonable inference that Thorson's negligence proximately caused Burk's death.

Thorson's argument, we believe, understates, if not ignores, the role that circumstantial evidence plays in establishing causation. Causation need not be proven by direct evidence alone, as circumstantial evidence may establish causation "if it furnishes a reasonable basis for supporting an

inference by th[e] jury of the ultimate fact that the defendant's negligence caused the plaintiff harm." *Canada v. McCarthy,* supra at 506. Moreover, where, as here, resolution of the dispositive issue necessitates a determination of one's state of mind, Courts should use great caution in deciding that issue on Summary Judgment, as state of mind is usually proven by circumstantial evidence alone. See, *Bergeson v. United States Fidelity and Guaranty Co.,* 398 N.W.2d 75, 78 (Minn.App.1986), aff'd, 414 N.W.2d 724 (Minn.1987), citing *Hahn v. Sargent,* 523 F.2d 461 (1st Cir. 1975); see also, e.g., *Smith v. Farha, M.D.,* 266 Kan. 991, 974 P.2d 563, 568 (1999); *Andrews v. Alabama Eye Bank,* 727 So.2d 62, 65 (Ala.1999); *Burr v. Kulas,* 564 N.W.2d 631, 635 (N.D.1997); *Rush v. Alaska Mortgage Group,* 937 P.2d 647, 651 (Alaska 1997); *Braxton–Secret v. A.H. Robins Co.,* 769 F.2d 528, 531 (9th Cir. 1985); cf., *Christopher v. Adam's Mark Hotels,* 137 F.3d 1069, 1071 (8th Cir.1998) (explaining that Courts should be cautious in deciding discrimination cases on Summary Judgment "because intent is usually a central issue"), cert. denied —— U.S. ——, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998).

One case from outside this jurisdiction provides an instructive application of the Courts' reluctance to grant Summary Judgment in cases where the state of mind of a deceased person is at issue. In *Perry v. Motorists Mutual Ins. Co.,* 860 S.W.2d 762 (Ky.1993), the Supreme Court of Kentucky considered a father's suit for underinsured motorist benefits against his insurer, which arose from his daughter's death in an automobile accident that occurred 12 hours after her wedding. The dispositive issue—whether the daughter was a resident of the father's home—depended entirely on whether the daughter had intended to abandon her father's home and establish a new residence. The Court explained that Summary Judgment "can often be inappropriate to resolve an issue of this nature," and noted that there were several possible inferences that could be drawn from the circumstantial evidence in the Record, leaving the issue as one which should be properly resolved by the Jury. *Id.* at 765.

Of course, this does not mean, of course, that Summary Judgment is always inappropriate where an actor's state of mind is at issue. See, *Bergeson v. United States Fidelity and Guaranty Co.,* supra at 78. Ultimately, as in any case involving such issues, "[t]he circumstantial evidence must be more than simply consistent with the plaintiff's theory of causation; reasonable minds must be able to conclude from the circumstances that the theory adopted outweighs and preponderates over opposing theories." *Schweich v. Ziegler, Inc.,* supra at 730.

■ Recognizing the caution which should be applied in resolving, as a matter of law, Burk's state of mind at the time he changed lanes, we are obligated to consider whether the Plaintiff has set forth "the requisite quantum of evidence to enable h[er] to reach the jury with h[er] claim." See, *Bergeson v. United States Fidelity and Guaranty Co.,* supra at 78, quoting *Hahn v. Sargent,* supra at 468. Where, as here, the "evidence produces more than one theory as to the manner in which an accident may have occurred," the requisite quantum of circumstantial evidence, which must be proffered by the Plaintiff, is that which would allow a reasonable Jury to find that her theory "fairly preponderate[s]" over others. *Whitman v. Speckel,* 237 Minn. 36, 42, 53 N.W.2d 558, 561 (Minn.1952).

■ We believe that the circumstantial evidence presented, when taken as a whole, warrants a reasonable inference that Burk changed lanes because he was confused by the "Y" intersection, coupled with the absence of adequate warnings, and other traffic control measures, along the highway, as opposed to other possible reasons. First, the Record evidence, that Burk had received a full night's sleep, and had appeared attentive minutes before the accident, tends to discount the possibility that Burk fell asleep at the wheel. Sec-

ond, Zietz's testimony, relating that Burk extended his trailing distance shortly before the accident, is not consistent with the notion that Burk changed lanes because he was attempting to pass the Frito Lay delivery truck.

Third, the Plaintiff's experts have opined that the configuration of the roadway, and its markings, would tend to mislead motorists, such as Burk, who were unfamiliar with this section of road, into moving leftward at "Y" intersection, and into the path of oncoming traffic. See, *Expert Report of Russell M. Lewis, Ph.D.* at 6, attached to *Affidavit of Russell M. Lewis; Expert Report of Gerson J. Alexander, CPE* at 4–5, attached to *Affidavit of Gerson J. Alexander; Expert Report of Myron J. Lofgren* at 3, attached to *Affidavit of Myron J. Lofgren.* Fourth, the Plaintiff has submitted the testimony of a multitude of lay witnesses, who relate that they experienced confusion when they approached the "Y" intersection, when traveling westbound on Highway 2.[1] See, *Bruce Zietz Depo.* at 25, 32; *Deposition of Nancy*

*Hough McGuire* at 10, 21, *Yoedicke Aff., Ex.* F; *Deposition of William Connner* at 13–14, *Yoedicke Aff., Ex.* G; *Deposition of Mary Hahn* at 16, *Yoedicke Aff., Ex.* H; *LaCoursiere Depo.* at 14–16; *Deposition of Timothy Berglund* at 7–8, *Yoedicke Aff., Ex.* K; *Deposition of Collette Zietz* at 11–12, *Yoedicke Aff., Ex.* L; *Deposition of Lawrence Houg* at 18–20, *Yoedicke Aff., Ex.* M.

Notably, the potential causes of the collision, which have been identified by Thorson, have application to any location along Highway 2, while the theory of causation, which the Plaintiff wants to submit to the Jury, has specific application to the precise location at which the collision occurred—namely, the spot at which the highway began to widen into the "Y" intersection. Of course, we leave to the Jury the weight to be placed on the geographic uniqueness of the Plaintiff's theory but, for these purposes, we conclude that a Jury could find the evidence presented, when taken in totality, preponderates in favor of the causation that the Plaintiff urges. Whether

---

1. Thorson raises two evidentiary challenges to the lay witness testimony that is proffered in support of the Plaintiff's theory of causation. First, Thorson contends that the evidence should be excluded as irrelevant, under Rule 402, Federal Rules of Evidence. Relevant evidence, under the Federal Rules, is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Rule 401, Federal Rules of Evidence.* According to Thorson, none of these witnesses could say what Burk was thinking when he moved into the path of the oncoming traffic, and their own impressions of the appearance of the intersection does not make it any more probable that Burk held the same impressions. Although we need not, and do not, now rule upon the admissibility of this evidence, the testimony of these witnesses does tend to show that drivers were commonly confused when they come upon Thorson's construction zone and, if otherwise competent, the evidence would permit an inference that, more likely than not, Burk was similarly confused by what he saw at that point in the road.

   Thorson also challenges the competence of the lay opinion testimony as being wholly speculative. Rule 701, Federal Rules of Evidence, permits lay witnesses to provide opinion or inferential testimony, if the testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Thus, speculative testimony, or that which is not based on the perception of a lay witness, is inadmissible. See, *Washington v. Department of Transp.,* 8 F.3d 296, 300 (5th Cir.1993). If the witnesses were testifying as to whether, in fact, Burk was confused by the roadway, we would agree with Thorson, that the testimony is inadmissible. However, the witnesses' testimony is being offered only to show their own perceptions of the roadway, so as to support an *inference* that Burk was confused. In that capacity, the proffered evidence satisfies both requirements of Rule 701, and it is not impermissibly speculative. Cf., *Young v. Illinois Cent. Gulf R. Co.,* 618 F.2d 332, 335–36 (5th Cir.1980) (in suit arising from collision with train crossing, claiming absence of appropriate warning, testimony relating lay witnesses' observations of their difficulties with the crossing held admissible).

Thorson's negligence, to the exclusion of the other potential causes, proximately resulted in Burk's death, is properly the province of the Jury. Cf., *Majerus v. Guelsow*, 262 Minn. 1, 7, 113 N.W.2d 450, 455 (1962) (circumstantial evidence supported Jury's finding that landlord's negligent maintenance of stairwell caused tenant's death, notwithstanding alternate possibility that someone intentionally pushed tenant); *Wohlfeil v. Murray Machinery, Inc.*, 344 N.W.2d 869 (Minn.App.1984) (where plaintiff could not remember accident, circumstantial evidence allowed Jury to decide, as question of fact, whether plaintiff was struck from wood by defective splitter or received blow to head from other source).

Thorson argues, however, that this evidence does not "preponderate" toward a finding that Burk's crash was caused by his state of confusion. Thorson underscores what it views as weaknesses and inconsistencies which diminish the believability of the Plaintiff's proofs. Where there is the requisite quantum of evidence as would permit a reasonable Jury to find such a causative theory to be appropriate, then our inquiry, in the context of Summary Judgment, is at an end. "Our task at the summary judgment stage *** is not *** to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1194 (8th Cir.1995). Having found that there is a genuine issue of material fact, as to whether Thorson's negligence proximately caused Burk's death, we are obliged to recommend that Thorson's Motion for Summary Judgment be denied.

NOW, THEREFORE, It is—

RECOMMENDED:

That Thorson, Inc.'s Motion for Summary Judgment [Docket No. 21] be denied.

June 7, 1999.