Filed 2/22/16 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2016 ND 44

Tyronne B. Kittleson, Trustee, 

Tyrone B. Kittleson Real Estate 

and Oil Trust, Plaintiff and Appellee

v.

Grynberg Petroleum Company; 

Celeste C. Grynberg, Trustee of the Rachel 

Susan Grynberg Trust; Celeste C. Grynberg, 

Trustee of the Stephen Mark Grynberg Trust; 

and Celeste C. Grynberg, Trustee of the 

Miriam Zela Grynberg Trust, Defendants and Appellants

and

Grynberg Petroleum Company; 

Celeste C. Grynberg, Trustee of the Rachel 

Susan Grynberg Trust; Celeste C. Grynberg, 

Trustee of the Stephen Mark Grynberg Trust; 

and Celeste C. Grynberg, Trustee of the 

Miriam Zela Grynberg Trust, Third-Party Plaintiffs

v.

Missouri River Royalty Corporation, Third-Party Defendant

No. 20150075

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable David W. Nelson, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Kent A. Reierson (argued), P.O. Box 1206, Williston, N.D. 58802-1206, and Aaron W. Nicholson (appeared), P.O. Box 2798, Bismarck, N.D. 58502-2798, for plaintiff and appellee.

Monte L. Rogneby, P.O. Box 2097, Bismarck, N.D. 58502-2097, for defendants and appellants Grynberg Petroleum Company and Celeste C. Grynberg.

Kittleson v. Grynberg Petroleum Company
 

No. 20150075

Sandstrom, Justice.

[¶1] The successors to the interest of the Grynberg Petroleum Company (“Grynberg”) appeal from a judgment concluding Grynberg wrongfully deducted certain costs from gas royalties paid to Tyronne B. Kittleson, as trustee of the Tyronne B. Kittleson Real Estate and Oil Trust (“Kittleson”), under a lease between the parties.  We affirm, concluding the district court correctly interpreted the lease, the amount of damages was not clearly erroneous, and the correct statute of limitations was applied.

I

[¶2] In 1991, Grynberg Petroleum Company and Kittleson’s predecessor in interest, Tyronne and Marilyn Kittleson, entered into an oil and gas lease.  The parties also executed a separate rider that modified and amended the lease.  The royalty clause of the lease provides in part:

Lessee [Grynberg] shall pay Lessor [Kittleson] the market value at the well for all gas (including all substances contained in such gas) produced from the leased premises and sold by 
Lessee . . . ; provided however, that there shall be no deductions from the value of Lessor’s
 royalty of any required processing, cost of dehydration, compression, transportation, or other matter to market such gas.

[¶3] The gas produced from the well on the leased premises is a sour gas with little to no market value.  To be made marketable, the gas must be compressed, treated, dehydrated, and processed.  After processing, the gas has a market value and can be sold.  The processing also produces additional products contained in the unprocessed sour gas that have value such as propane, butane, natural gasoline, and drip liquids.

[¶4] Grynberg does not operate the gas-producing well.  The well is operated by Missouri River Royalty Corporation under a joint operating agreement with Grynberg. Missouri River entered into agreements for third parties to gather and process the gas.

[¶5] After the gas and liquids were processed and sold, Grynberg calculated Kittleson’s royalty using the work-back method.  Under the work-back method, market value of the gas at the well is calculated by deducting post-production costs incurred in making the sour gas a marketable product from the plant tailgate proceeds.  Grynberg paid Kittleson by subtracting post-production costs from the sales price Grynberg received for the processed gas.

[¶6] In 2005, Kittleson sued Grynberg, claiming that under the “no deductions” language in the royalty clause of the lease, Grynberg was prohibited from deducting the costs of processing the sour gas from Kittleson’s royalty.  Kittleson alleged Grynberg began wrongfully deducting post-production costs from Kittleson’s royalties in 1997.  Grynberg denied liability, claiming the royalties paid to Kittleson did not violate the terms of the lease.

[¶7] After a bench trial, the district court concluded the royalty clause of the lease did not allow Grynberg to deduct the processing costs incurred in turning the sour gas into a marketable product.  The court applied the ten-year statute of limitations under N.D.C.C. § 28-01-15(2) and found Kittleson’s royalties were underpaid by approximately $17,240 from 1997 to 2009.  Kittleson was also awarded interest on the underpaid royalties and attorney’s fees and costs for a total judgment of approximately $111,300.

[¶8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Grynberg’s appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II

[¶9] Grynberg argues the district court erred in its interpretation of the lease.  Grynberg argues the lease allows it to subtract post-production costs from Kittleson’s royalty.

[¶10] Interpretation of a written contract to determine its legal effect is a question of law, fully reviewable on appeal.  
City of Moorhead v. Bridge Co.
, 2015 ND 189, ¶ 10, 867 N.W.2d 339.  “The general rules governing contract interpretation apply to the interpretation of leases.”  
Sterling Dev. Grp. Three, LLC v. Carlson
, 2015 ND 39, ¶ 13, 859 N.W.2d 414.  “When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible.”  N.D.C.C. § 9-07-04.  A contract must be construed as a whole to give effect to each provision if reasonably practicable.  N.D.C.C. § 9-07-06.  Words are given their plain, ordinary, and commonly understood meaning, unless a contrary intention plainly appears.  N.D.C.C. § 9-07-09.

[¶11] Grynberg argues the district court’s interpretation of the lease and valuation of the gas is contrary to our decision in 
Bice v. Petro-Hunt, L.L.C.
, 2009 ND 124, 768 N.W.2d 496.  In 
Bice
, the royalty clauses of the leases in dispute required the lessor’s royalty to be calculated on the basis of the gas’s market value at the well.  
Id.
 at ¶ 4. We adopted the “at the well” rule in our interpretation of “market value at the well.”  
Id.
 at ¶ 21.  Under the “at the well” rule, a lessee may use the work-back or netback method to calculate the gas or oil’s market value at the well.  
Id.
 at ¶ 14.  “Under the work-back method the lessee calculates the market value of the gas at the well ‘by taking the sales price that it received for its oil or gas production at a downstream point of sale and then subtracting the reasonable post-production costs (including transportation, gathering, compression, processing, treating, and marketing costs) that the lessee incurred after extracting the oil or gas from the ground.’”  
Id.
 (quoting Byron C. Keeling & Karolyn King Gillespie, 
The First Marketable Product Doctrine: Just What is the Product?
, 37 St. Mary’s L.J. 1, 32 (2005)).  The work-back method under the “at the well” rule allows a lessee to deduct post-production costs from the plant tailgate proceeds before calculating royalty.  
Bice
, at ¶ 21.

[¶12] Grynberg argues our holding in 
Bice
 controls this case and allows Grynberg to deduct from Kittleson’s royalty the post-production costs required to make the gas marketable.

[¶13] Here, similar to 
Bice
, the royalty clause of the lease requires Grynberg to pay Kittleson the market value at the well for all gas produced from the leased premises.  However, unlike 
Bice
, the royalty clause contains additional language stating, “provided however, that there shall be no deductions from the value of Lessor’s royalty of any required processing, cost of dehydration, compression, transportation, or other matter to market such gas.”

[¶14] Under our rules of contract interpretation, “if a conflict exists between a specific provision and a general provision in a contract, the specific provision qualifies the general provision.”  
Kortum v. Johnson
, 2008 ND 154, ¶ 44, 755 N.W.2d 432 (quoting 
Oakes Farming Ass’n v. Martinson Bros.
, 318 N.W.2d 897, 908 (N.D. 1982)); 
Fortis Benefits Ins. Co. v. Hauer
, 2001 ND 186, ¶ 17, 636 N.W.2d 200 (“[I]t is a well-accepted rule of contract interpretation that when a conflict exists between a specific provision and a general provision in a contract, the specific provision ordinarily prevails over the general provision.”).

[¶15] Here, “market value at the well” and “no deductions from the . . . royalty” are in conflict.  Under the “at the well” rule, calculating market value using the work-

back method allows a lessee to deduct post-production costs from the royalty.  The “no deductions” language in the royalty clause, however, specifically prohibits deductions of post-production costs from the royalty.  We hold the more specific “no deductions” language qualifies and prevails over “market value at the well.”  We conclude that under the “no deductions” language of the royalty clause, Grynberg is not allowed to deduct from Kittleson’s royalty the post-production costs required to make the gas marketable.

[¶16] Contrary to Grynberg’s assertion, our decision in this case does not require the reversal of 
Bice
.  As the district court noted, by including the “no deductions” language in the royalty clause, the parties altered the meaning of “market value at the well.”  Grynberg can calculate the gas’s market value at the well using the work-back method; however, any deductions for post-production costs must be added back to calculate Kittleson’s royalty.  The district court correctly interpreted the lease.

III

[¶17] Grynberg argues the district court’s findings of fact on the value of the gas and liquids at the well are not supported by the evidence in the record.

[¶18] A district court’s decision on the amount of damages caused by a breach of contract is a finding of fact subject to the clearly erroneous standard of review.  
Langer v. Bartholomay
, 2008 ND 40, ¶ 27, 745 N.W.2d 649.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, we are left with a definite and firm conviction a mistake has been made.”  
Sterling
, 2015 ND 39, ¶ 7, 859 N.W.2d 414.  The evidence is viewed in the light most favorable to the district court’s findings, and we do not reweigh evidence or reassess credibility if there is evidence to support the findings.  
Keller v. Bolding
, 2004 ND 80, ¶ 22, 678 N.W.2d 578.

[¶19] Kittleson provided numerous exhibits at trial regarding its calculation of damages that were based on the deductions taken from the royalty.  The exhibits included the deposition testimony of an accountant describing how the damages were calculated, accounting statements, a report summarizing Kittleson’s monthly royalties from 1993 to 2009, and a report summarizing what Kittleson’s royalties should have been had post-production costs not been deducted.

[¶20] The district court found Kittleson’s royalties were underpaid in the amount of $17,237.71, which was the amount calculated by Kittleson’s accountant.  The court’s award of damages is supported by the evidence, and we are not left with a definite and firm conviction the court’s findings on damages are clearly erroneous.

IV

[¶21] Grynberg argues the district court erred in concluding the ten-year statute of limitations in N.D.C.C. § 28-01-15(2) applied to Kittleson’s action.  Grynberg argues the four-year statute of limitations in N.D.C.C. § 41-02-104, which governs claims based on contracts for the sale of goods, should apply.  Alternatively, Grynberg argues, if the U.C.C.’s four-year statute of limitations does not apply, the six-year statute of limitations in N.D.C.C. § 28-01-16(1) applies to this action.

[¶22] “Interpretation of a statute is a question of law fully reviewable on appeal.” 
Pratt v. Altendorf
, 2005 ND 32, ¶ 12, 692 N.W.2d 115.  Under our rules of statutory interpretation, a specific statute prevails over a general statute.  N.D.C.C. § 1-02-07; 
Finstad v. Ransom-Sargent Water Users, Inc.
, 2011 ND 215, ¶ 9, 812 N.W.2d 323.  Another rule of construction relating to statutes of limitation is that the longer statute of limitations generally applies if there is a question about applicability.  
Locken v. Locken
, 2011 ND 90, ¶ 17, 797 N.W.2d 301; 
Burr v. Kulas
, 1997 ND 98, ¶ 12, 564 N.W.2d 631.

[¶23] This Court has not decided which statute of limitations applies to an action for the failure to pay or the underpayment of royalties under an oil and gas lease. Regarding actions for nonpayment or underpayment of royalties, other oil and gas-

producing states apply a statute of limitations pertaining to an action on a contract. 
See
 
Harrison v. Bass Enters. Prod. Co.
, 888 S.W.2d 532, 537 (Tex. App. 1994) (four-

year statute of limitations); 
BP America Prod. Co. v. Patterson
, 185 P.3d 811, 814 (Colo. 2008) (six-year statute of limitations).

A

[¶24] Grynberg argues the four-year statute of limitations in N.D.C.C. § 41-02-104, which governs claims based on contracts for the sale of goods, applies in this case.  Grynberg argues the Uniform Commercial Code (“U.C.C.”), N.D.C.C. tit. 41, applies because the payment of a royalty is a contract for the sale of goods.

[¶25] Section 41-02-07(1), N.D.C.C., provides, “A contract for the sale of minerals or the like (including oil and gas) . . . to be removed from realty is a contract for the sale of goods within this chapter if they are to be severed by the seller.”  The comments to N.D.C.C. § 41-02-07 state subsection one “applies only if the minerals . . . ‘are to be severed by the seller’.  If the buyer is to sever, such transactions are considered contracts affecting land.”

[¶26] Grynberg argues the payment of a royalty is a contract for the sale of goods and is governed by the U.C.C.  To support its argument, Grynberg cites 
Finstrom v. First State Bank of Buxton
, 525 N.W.2d 675 (N.D. 1994).  In 
Finstrom
, the plaintiff landowner brought a breach of contract and conversion action alleging he was not paid royalties owed on gravel extracted from his land and sold under a lease.  
Id.
 at 676.  We characterized the plaintiff’s interest in the severed gravel as a personal property interest; however, we did not decide whether the U.C.C. applied to the plaintiff’s action.  
Id.
 at 677-78.  We also did not decide which specific statute of limitations applied; rather, we decided when the plaintiff’s action accrued for purposes of applying a statute of limitations.  
Id.
  After deciding when the action accrued, we held plaintiff’s claims were not time-barred regardless of the statute of limitations.  
Id.
 at 678.

[¶27] Here, there is no dispute about when Kittleson’s action accrued.  The sole issue regarding the statute of limitations is whether the correct statute was applied.  We conclude 
Finstrom
 does not apply here.

[¶28] Under the U.C.C., a sale is defined as “the passing of title from the seller to the buyer for a price.”  N.D.C.C. § 41-02-06(1)(d).  A seller is “a person who sells or contracts to sell goods.”  N.D.C.C. § 41-02-03(1)(d).  As stated above, minerals to be removed from realty are goods if they are to be severed by the seller.  N.D.C.C. § 41-

02-07(1).

[¶29] Kittleson and Grynberg are parties to an oil and gas lease.  As the lessor under the lease, Kittleson receives a royalty for the sale of the gas.  Kittleson does not sell or enter into contracts for the sale of the gas.  Under the lease, Kittleson is not a “seller” as defined by the U.C.C.  In addition, there is no evidence Kittleson severs the gas from the property before it is processed and sold.  Because Kittleson does not sever and sell the gas, we conclude the U.C.C. and the four-year statute of limitations under N.D.C.C. § 41-02-104 do not apply in this case.  
See, e.g.
, 
DePugh v. Mead Corp.
, 607 N.E.2d 867 (Ohio 1992) (Oral contract involving sale of clay requiring buyer to sever the clay by removing several feet of topsoil from the seller’s land was not a sale of goods under the U.C.C.); 
Tousley-Bixler Constr. Co., Inc. v. Colgate Enter., Inc.
, 429 N.E.2d 979, 982 (Ind. Ct. App. 1982) (U.C.C. did not apply to sale of clay when buyer was required to remove the clay from under the topsoil).

B

[¶30] Grynberg alternatively argues the six-year statute of limitations in N.D.C.C. § 28-01-16(1) governs this action.  The district court applied the ten-year statute of limitations found in N.D.C.C. § 28-01-15(2).  The court concluded the ten-year limitations period applied because a mineral lease involves an interest in real property.

[¶31] Kittleson sued Grynberg, alleging it breached the oil and gas lease by underpaying gas royalties.  “The obligation arising under an oil and gas lease to pay oil or gas royalties to the mineral owner . . . is of the essence in the lease contract.” N.D.C.C. § 47-16-39.1; 
Van Sickle v. Hallmark & Assoc., Inc.
, 2013 ND 218, ¶ 35, 840 N.W.2d 92.

[¶32] In North Dakota, two statutes of limitations apply to contract actions, N.D.C.C. §§ 28-01-16(1) and 28-01-15(2).  Under N.D.C.C. § 28-01-16(1), a six-year statute of limitations applies to “[a]n action upon a contract, obligation, or liability, express or implied, subject to the provisions of section[] 28-01-15.”  Section 28-01-15(2), N.D.C.C., provides a ten-year statute of limitations for “[a]n action upon a contract contained in any conveyance or mortgage of or instrument affecting the title to real property.”

[¶33] Both N.D.C.C. § 28-01-16(1) and N.D.C.C. § 28-01-15(2) apply to contract actions.  As discussed earlier, however, N.D.C.C. § 28-01-16(1) is subject to the provisions of N.D.C.C. § 28-01-15.  Section 28-01-15(2), N.D.C.C., provides a ten-year statute of limitations for an action on “a contract contained in any conveyance or mortgage of or instrument affecting the title to real property.”  A specific statute prevails over a general statute.  N.D.C.C. § 1-02-07.  The ten-year limitations period in N.D.C.C. § 28-01-15(2) “for ‘[a]n action upon a contract contained in any . . . . instrument affecting the title to real property’ . . . is more specific than the general six-year limitation for ‘[a]n action upon a contract’ in N.D.C.C. § 28-01-16(1).”  
Diocese of Bismarck Trust v. Ramada, Inc.
, 553 N.W.2d 760, 766 (N.D. 1996).  
See also
 
Locken
, 2011 ND 90, ¶ 17, 797 N.W.2d 301; 
Burr
, 1997 ND 98, ¶ 12, 564 N.W.2d 631(if there is a question about which statute of limitations applies, the longer time will be applied).

[¶34] “Oil and gas leases are interests in real property in North Dakota.”  
Nantt v. Puckett Energy Co.
, 382 N.W.2d 655, 659 (N.D. 1986).  “A real property lease is generally considered a contract and a conveyance of an interest in land.”  
Ramada
, 553 N.W.2d at 766.  The interest conveyed to the lessee under an oil and gas lease is known as a working interest.  
Corbett v. La Bere
, 68 N.W.2d 211, 213 (N.D. 1955).  The interest retained by the lessor is known as a royalty interest.  
Id.
 at 214.  The working interest and royalty interest are both interests in real property.  
Id.
 at 213-14.

[¶35] In two earlier cases, we addressed and decided whether N.D.C.C. § 28-01-

16(1) or N.D.C.C. § 28-01-15(2) applied to a contract action.  
See
 
Ramada
, 553 N.W.2d at 765-66; 
Jones v. Barnett
, 2000 ND 207, ¶ 14, 619 N.W.2d 490.  In 
Ramada
, the plaintiff brought an action to reform a real property lease.  
Ramada
, at 764.  We held the ten-year limitation period in N.D.C.C. § 28-01-15(2), rather than the six-year limitation period in N.D.C.C. § 28-01-16(1), applied to the action because the real property lease at issue was “a contractual agreement in a conveyance or instrument affecting title to real property within the meaning of N.D.C.C. § 28-01-

15(2).”  
Id.
 at 766.

[¶36] In 
Jones
, the defendant Barnett conveyed farmland to Jones by quitclaim deed. 2000 ND 207, ¶ 2, 619 N.W.2d 490.  Jones sued Barnett for trespassing on the property after it was conveyed to Jones.  
Id.
  Barnett counterclaimed, alleging the parties had a verbal agreement regarding the financial terms of the conveyance and Jones did not pay the full amount.  
Id.
 at ¶ 12.  We held the ten-year limitation period in N.D.C.C. § 28-01-15(2) did not apply because the “alleged verbal agreement on financial terms [was] not contained in the quitclaim deed.”  
Id.
 at ¶ 14.

[¶37] The legislature has stated that the obligation to pay royalties “is of the essence in the [oil and gas] lease contract.”  N.D.C.C. § 47-16-39.1.  Similar to 
Ramada
, and unlike 
Jones
, the provision here regarding the payment of royalties is contained in the lease.  We conclude the obligation to pay royalties under an oil and gas lease is a contract contained in a conveyance or instrument affecting title to real property within the meaning of N.D.C.C. § 28-01-15(2).  We hold the ten-year limitation period in N.D.C.C. § 28-01-15(2) applies to Kittleson’s breach of contract action for the underpayment of royalties under the oil and gas lease.

V

[¶38] We have considered Grynberg’s remaining arguments and conclude they are either unnecessary to our decision or without merit.  The judgment is affirmed.

[¶39] Dale V. Sandstrom

Daniel J. Crothers

Lisa Fair McEvers

Douglas L. Mattson, D.J.

Gerald W. VandeWalle, C.J.

[¶40] The Honorable Douglas L. Mattson, D.J., sitting in place of Kapsner, J., disqualified.